## RIGGLES *v.* ERNEY.

### APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 335. Argued April 2, 3, 1894. — Decided May 26, 1894.

Part-performance of an oral contract for the conveyance of an interest in real estate in the District of Columbia takes it out of the operation of the statute of frauds, and authorizes a court of equity to decree a full and specific performance of it, if proved.

THIS was a bill in equity for the specific performance of an oral contract for the sale of land.

The bill made substantially the following case: Thomas Riggles, ancestor both of plaintiffs and defendant, died in 1863, leaving a will in which he made the following devises:

"I will and devise that my house and premises which I now occupy, situated in the city of Washington in the District of Columbia, being lot numbered seven (7) and part of lot numbered eight (8) in square numbered one hundred and ninety-nine (199), together with all the household and kitchen furniture and other personal property that may be on said premises at the time of my decease shall be and remain in the possession of my wife, Catharine Riggles, during her lifetime, for the benefit of herself and our four children, named Thomas, Catharine, Maria, and Hannah Riggles, respectively; and, after the death of my said wife, the said house and premises to remain in the hands of my executor, hereinafter named, to be by him used for the benefit of the above-named four children until the youngest one of them surviving shall become twenty-one years of age; provided, that when the said Thomas shall arrive at twenty-one years of age, and when either of the said daughters shall be married, then, and in either such case, the benefit arising from said property shall be exclusively for the use of such of said daughters as may then be unmarried; and after the death of my said wife, and the said youngest child shall attain the age of twenty-one years, then the said house and premises I will and bequeath unto my son Thomas Riggles, with the express provision that such of my aforenamed daughters as may then be unmarried shall be taken care of by my said son Thomas; and, in case the said Thomas Riggles shall depart this life before the said three sisters, then the said house and premises to be sold, and the proceeds be divided equally among the said three sisters or the survivors of them.

"Item: I will and devise that all the lots of ground belonging to me situate in square numbered one hundred and seventy-nine (179) in said city of Washington which may remain unsold and disposed of by my said executor at such time and in such manner as his discretion may dictate as most for the advantage of my wife and children aforenamed, and the amounts that may be realized therefrom, after paying all necessary expenses of my wife and family, be by him

invested at his discretion for the benefit of my said wife and four children or as many of them as shall remain unmarried; and after the death of my said wife, and our four children shall have attained the age of twenty-one years if any of said property in square one hundred and seventy-nine remains unsold, and also any surplus that may then remain from the proceeds of said square one hundred and seventy-nine, to be divided between my other children, John, James, and William Riggles, and my daughters, Mary Ann Miller and Sarah Turton; and it is further my wish and desire that should the residue remaining from the sale of my lots in square one hundred and seventy-nine be more than the value of said house and premises I now occupy in square one hundred and ninety-nine, then, and in that case, I will and devise that my son Thomas and my said daughters Catharine, Maria, and Hannah Riggles shall receive from the proceeds of square one hundred and seventy-nine, such portion of such proceeds as make all their shares alike or equal to each other and to the shares of my other children."

Under this will, John B. Turton subdivided square 179, sold portions of the same and died, leaving lots from 1 to 42 and from 61 to 80, inclusive, unsold and subject to a deed of trust executed by him to secure the repayment of certain moneys borrowed. Such moneys, as well as the proceeds of the lots sold, were alleged to have been appropriated to the support of the widow and her four children.

In 1873, the widow and her four children, Thomas, Maria, Catharine, and Hannah, desiring to have the property in square 179 sold for the purpose of a partial division of the estate, and for the purpose of paying certain indebtedness they had incurred, as well as certain taxes and assessments upon the homestead, it was proposed and agreed that, notwithstanding the devises in the will, the entire estate should be equally divided between the widow and the children of the testator; that the lots in square 179 should be at once sold for the payment of the incumbrances, taxes, and assessments upon the whole realty and of the indebtedness of the widow and her four children, and that the net proceeds

should be divided between the widow and *all* the children, and that the homestead should be retained for the use and occupation of the widow and her four children until her death, and the death or marriage of her daughters, when the said homestead property should be sold and the proceeds divided among all the children of the testator.

In pursuance of this arrangement, a deed was executed, whereby all the parties in interest conveyed to John Riggles and George W. Evans the remaining lots in square 179 in trust to sell and dispose of the same, to pay and discharge all taxes and assessments due upon the lots in both squares, and after paying and discharging all liens, taxes, and assessments upon all the property, to distribute the remainder of the proceeds between the widow and children in equal proportions, share and share alike, and "that the said deed was made and executed by all of the parties, including the defendant Hannah Erney, (who executed the said deed as Hannah Riggles,) upon the distinct agreement and condition that whenever under the said will and testament that the said property in square 199 should be sold, the proceeds of such sale should be applied and distributed in the same manner." The trustees, Riggles and Evans, proceeded under this arrangement, sold the lots in square 179, from time to time, paid the liens and incumbrances upon the property, as well as taxes and assessments; paid and discharged the indebtedness contracted by the widow and her four children, including defendant Hannah Erney, for their maintenance, and also advanced to the widow the further sum of $500, the said payments on account of the said homestead property, and of the maintenance and support of the widow and her four children, amounting to nearly $3000. After such payments, the trustees divided the remainder of the proceeds among all the children of the testator; the shares so paid to each of the devisees being over $3000, and such distribution being made strictly in pursuance of the original agreement.

That the period has arrived when the lots in square 199 should be sold, and the proceeds divided; that the widow is

dead, as well as three of her four children, leaving Hannah Erney sole survivor of such devisee; that plaintiffs have applied to defendant Hannah to carry out this agreement, but she refuses to acknowledge it, and claims that, under the provisions of the will, she, as the sole survivor of the devisees of the lots in square 199, is entitled to all of said property and the proceeds thereof. Plaintiffs further averred that her agreement to sell the homestead property was the only consideration for the appropriation to the widow and her four children of the proceeds of sale of the property in square 179; that under the will defendant and her co-devisees were not entitled to any portion of such property except for their current support, while the daughters were unmarried, and that plaintiffs by making the agreement gave the defendant Hannah and her co-devisees $18,000 — much more than the entire value of the homestead property; that it was the intention of the testator that in the ultimate division of the estate all the children should have an equal share; that such intention was recognized and was the basis upon which the agreement was made, and that the distribution of the proceeds of the sales of square 179 was in partial execution of such intention and agreement.

The prayer of the bill was that defendants Hannah and her husband might be enjoined from disposing of the property in square 199 until the rights of the parties could be definitely settled, and that such property might be sold and the proceeds distributed upon the basis of the agreement.

Defendant Hannah Erney in her separate answer admitted signing the deed for the sale of the remaining lots in square 179, but denied there was any agreement or condition that the homestead should be sold and the proceeds divided in the same manner.

Replication was filed, proofs taken, and, the case coming on to be heard in the court below, the bill was dismissed upon the ground that the statute of frauds presented an insurmountable barrier to relief. Plaintiffs appealed to the General Term, by which the decree of the special

term was affirmed, and the plaintiffs appealed to this court.[1]

*Mr. James G. Payne* for appellants.

*Mr. Edwin B. Hay* for appellees.

The statute of frauds in Maryland requires written evidence of the contract, or a court cannot decree performance. The words of the statute are, " unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." *Barry* v. *Coombe,* 1 Pet. 640. And to authorize a decree for the specific performance of a parol agreement within the statute, on the ground of part performance, it is indispensable, not only that the acts which are alleged to be part performance, but the contract itself, as stated in the bill, should be established by clear and definite proof.

In *Smith* v. *Crandall,* 20 Maryland, 482, in which reference is made to 3 Maryland, 490, it is said that where a party claims to take the case out of the statute of frauds, on the ground of part performance of the contract, he must make out by clear and satisfactory proof the existence of the contract as laid in the bill, and the act of part performance must be of the iden-

---

[1] The judgment of the court below was as follows :

" This cause having been duly calendared and argued and submitted and the proofs read and considered, and it appearing to the court that the provisions of the statute of frauds in respect to contracts for and conveyances of interests in real estate present an insurmountable barrier to granting the relief prayed upon the case as made in the bill and attempted to be made out in proof, it is this 14th of November, A.D. 1887, ordered, adjudged, and decreed that the bill in this cause be dismissed with costs."

The judgment of the appellate court was as follows :

" This cause came on to be heard at this term of the court on appeal by the complainants, John Riggles *et als.* from the decree passed therein on the 14th day of November, 1887, dismissing the bill with costs, and was argued by counsel for the respective parties and submitted. Upon consideration thereof it is now here, this 18th day of February, A.D. 1890, adjudged and decreed and is hereby affirmed with costs, to be taxed by the clerk."

tical contract set up. It is not enough that the act is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill.

In *Mundorf* v. *Kilbourn*, 4 Maryland, 459, 462, the court says : " We need not multiply authorities to show that in cases for specific performance the complainant must establish the *very* contract set up in the bill, and that all acts of part performance relied upon to take the case without operation of the statute of frauds, must be clear and definite, and refer exclusively to the alleged agreement."

In *Stoddert* v. *Bowie*, 5 Maryland, 18, 35, the court said : " No rule is better established than that every agreement, to merit the interposition of a court of equity in its favor, must be plain, just, reasonable, *bona fide*, certain in all its parts, mutual, etc. And if any of these ingredients are wanting, courts of equity will not decree a specific performance." See also *Wadsworth* v. *Manning*, 4 Maryland, 59 ; *Waters* v. *Howard*, 8 Gill, 262, 275 ; *Hall* v. *Hall*, 1 Gill, 383 ; *Owings* v. *Baldwin*, 8 Gill, 337 ; *Beard* v. *Linthicum*, 1 Maryland Ch. 345 ; *Hopkins* v. *Roberts*, 54 Maryland, 312.

The defendant denies positively any agreement whatever to dispose of the homestead, and there is only uncertain proof that she was aware of such agreement. Those who testify, state that it was talked of loud enough for her to hear it, but concerning her understanding of it they only conjecture.

In the testimony there is no proof of that clear and decisive character which should govern a court, in the exercise of its discretion, to decree a specific performance.

Mr. Justice Grier, in *Purcell* v. *Coleman*, 4 Wall. 513, 517, in his opinion, says : " A mere breach of a parol promise will not make a case for the interference of a chancellor. . . . When he requests a court to interfere . . . he should be held to full, satisfactory, and undubitable proof of the contract and of its terms. Such proof must be clear, definite, and conclusive and must show a contract leaving no *jus deliberandi* or *locus pœnitentiæ*. It cannot be made by mere hearsay or evidence of the declarations of a party to mere strangers to the transaction, in chance conversation, which the witness had

no reason to recollect from interest in the subject-matter which may have been imperfectly heard or inaccurately remembered, perverted, or altogether fabricated; testimony therefore impossible to be contradicted.

In *Williams* v. *Morris*, 95 U. S. 444, even though written receipts were introduced to identify parties to the property, the testimony was not sufficient to prove part performance.

In *Bigelow* v. *Armes*, 108 U. S. 10, while there was no written contract, yet the facts were such that left no *jus deliberandi*, and showed such part performance that took the case out of the operation of the statute. There is, however, a written memorandum in this case which describes the property and states the consideration — signed by the parties to the transaction.

In *Beckwith* v. *Talbot*, 95 U. S. 289, the defendant in that action was charged on a memorandum in which his name was not found, but letters were produced in evidence which proved a sufficient ratification of the memorandum to comply with the statute and the court below so held and was sustained by this court.

In *Grafton* v. *Cummings*, 99 U. S. 100, even though there are memoranda and writings, yet this court held them defective and not sufficient to take the case from the operation of the statute.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The sole question is whether the plaintiffs have made out such a case as entitles them under the statute of frauds to a specific performance of the alleged agreement for the sale of the homestead property in square 199, and an equal division of the proceeds.

Thomas Riggles, the ancestor, was possessed of two parcels of land in Washington, viz.: Certain lots in square 199, containing the homestead, worth from six to eight thousand dollars; and a large number of lots in square 179, then unimproved, and worth about forty thousand dollars.

The lots in square 199, the homestead, he left to his widow for life, for the benefit of herself and her four children; after her death, to his executors, for the benefit of his four children until the youngest should become of age, and then to his son Thomas, charged with the care and support of the unmarried daughters by his second wife; and in case of the death of Thomas before his sisters, the property was to be sold and the proceeds equally divided among these sisters.

The lots in square 179 were also charged with the maintenance and necessary expenses of his wife and her four children during her life, and after her death, with the support of the children, until the youngest should become of age. The executor was given power to dispose of all of 179 if, in his discretion, it should become necessary to apply the same to such use, and any surplus that should remain was to be divided among testator's children by his first wife, but should such residue remaining from 179 be more than the value of the homestead property, the children by the second wife should receive from such proceeds such portions as to make their shares alike or equal to each other, and the shares of the other children.

Thomas Riggles, Jr., son of the second wife, died December 27, 1883; Catharine Riggles, widow, died November, 1884. Hannah Riggles Erney, by the death of her brother and sisters, is the sole survivor of the children of the second wife, and entitled to the homestead under the will.

Plaintiffs' testimony tended to show that, at a meeting of the widow and all the heirs of the estate in June, 1873, it was agreed that the entire estate should be equally divided among the widow and children; that the lots in square 179 should be immediately sold, and the net proceeds, after payment of incumbrances, taxes, and assessments upon the whole estate, should be divided between the widow and all the children; and that the homestead lots in square 199 should be retained for the use of the widow and her children until her death, or the death or marriage of the daughters, when this property should also be sold, and the proceeds divided among all the children. This agreement, so far as it concerned lots in 179,

was carried out; so far as it concerned square 199 it was denied and the statute pleaded.

But if the contract was made, as claimed, the sale and division of proceeds of the lots in square 179 was a part performance of such contracts under the decisions both of this court and of Maryland. The case of *Caldwell* v. *Carrington*, 9 Pet. 86, is not dissimilar. This was a bill filed by Carrington's heirs in the Circuit Court for the District of Kentucky, claiming certain lands in that State, under a parol agreement, by which Carrington agreed with Williams for an exchange of lands which Carrington owned in Virginia for certain military lands in Kentucky. Williams took possession of the lands in Virginia and sold a part of them. The bill prayed that the heirs of Williams should be decreed to convey the military lands in Kentucky. This court held that, although the statute of frauds avoids parol contracts for lands, yet the complete execution of the contract in this case by Carrington, by conveying to Williams the lands he had agreed to give him in exchange, prevented the operation of the statute. See also *Galbraith* v. *McLain*, 84 Illinois, 379; *Paine* v. *Wilcox*, 16 Wisconsin, 202. So in *Neale* v. *Neales*, 9 Wall. 1, a parol gift of land was made to a donor, who took possession, and, induced by the promise of the donor to give a deed of it, made valuable improvements on the property. It was held that the donor, having stipulated that the expenditure should be made, this should be regarded as a consideration or condition of the gift, and a specific performance was decreed. To same effect is *Hardesty* v. *Richardson*, 44 Maryland, 617. So in *Bigelow* v. *Armes*, 108 U. S. 10. Armes proposed in writing to Bigelow to exchange his real estate for Bigelow's with a cash bonus. The latter accepted in writing. Armes complied in full; Bigelow in part only. It was held to be unnecessary to determine whether the written memorandum was sufficient, as it was the duty of the court, in view of the full performance by Armes, to decree performance by Bigelow. There are other cases in this court in which the evidence was deemed insufficient to justify a decree for specific performance, but the principle of the cases above cited has never been ques-

tioned. *Colson* v. *Thompson*, 2 Wheat. 336; *Purcell* v. *Miner*, 4 Wall. 513; *Grafton* v. *Cummings*, 99 U. S. 100. Indeed, the rule is too well settled to require further citation of authorities, that, if the parol agreement be clearly and satisfactorily proven, and the plaintiff, relying upon such agreement and the promise of the defendant to perform his part, has done acts in part performance of such agreement, to the knowledge of the defendant — acts which have so altered the relations of the parties as to prevent their restoration to their former condition — it would be a virtual fraud to allow the defendant to interpose the statute as a defence and thus to secure to himself the benefit of what has been done in part performance. It must appear, however, that the acts done by the plaintiff were done in pursuance of the contract, and for the purpose of carrying it into execution, and with the consent or knowledge of the other party. While acts done prior to the contract or preparatory thereto, such as delivering abstracts of titles, measuring the land, drawing up deeds, etc., are not regarded as sufficient part performance, it is otherwise with such acts as taking open possession of the land sold, or making permanent or valuable improvements thereon, or doing other acts in relation to the land manifestly inconsistent with any other theory than that of carrying out the parol undertaking.

Plaintiff introduced the testimony of three witnesses, all of which tended to show that a meeting of all the heirs was held the last of May, 1873, at the homestead, at which it was agreed to sell square 179, pay off the indebtedness, and divide the balance. The indebtedness consisted of taxes upon square 179 and a mortgage debt upon it, the indebtedness of the widow, and the taxes due upon the homestead occupied by her in square 199. There was another meeting in June, at which there was a deed read which had been prepared. John Riggles, who appeared for the first wife, objected to the deed upon the ground that it was not in accordance with the will, when Mr. Evans, who appeared on behalf of the children of the second wife, promised that the children should share and share alike in the house at the death of the mother, and said

" that it would not be fair for the children of the last wife to do all the waiting and the children of the first wife get their share at once; that it would only be equitable for the children of the first wife to do part of the waiting and share equally with them, so that it would be literally carried out, and we consented to divide equally upon that basis, and would have refused to have sold any more than sufficient to pay off the indebtedness unless they would agree to this equitable division, which was agreed to by all the heirs without any objection."

This agreement, so far as concerned square 179, was carried out, and defendant Hannah was paid about $3000 as her share of the proceeds of the sale. Mr. Evans, who, as before stated, appeared for the children of the second wife, among whom was defendant Hannah, after stating that it was understood that the homestead was to be sold, says that " it was a distinct and positive verbal agreement, thoroughly understood and consented to by all without reservation; we did not wish to send the deed back for a change, fearing that delays were dangerous; we were anxious to settle. Q. Do you know that Hannah Riggles Erney understood positively that she was consenting and agreeing to break the terms of her father's will? A. I do not know that she did. . . . As I said before, I represented the children by the second wife, and my wife's interest, like Mrs. Erney's, I was bound to protect in every way. I, therefore, consulted with her, explained the terms of the deed, read the will to her, and asked her, as well as the other heirs by the second wife, if she thoroughly understood and consented to selling the property. She was satisfied, and so expressed herself." This testimony was also corroborated by Sarah A. Turton, one of the children by the first wife.

The only testimony to the contrary is that of defendant herself, who always understood that the land was sold " to pay the indebtedness of mother, and then it was to be divided equally, and that is all." She remembered of but one meeting, but acknowledged that Mr. Evans was her representative in the transaction. She denied entering into any contract con-

cerning the disposition of the land, but her testimony is quite unsatisfactory and her memory evidently defective.

By the terms of the will square 179, after being charged with the maintenance and support of the widow and her four children during her life, and after her death until the youngest should become of age, was to be sold and the proceeds to be divided between the children of the first wife, with a proviso that, if the lands so sold should exceed the value of the homestead lands, the children of the second wife should receive enough to make the shares of all equal.

The ultimate objects of the will were, *first* to provide for the maintenance and expenses of the wife and younger children until they became of age; and, *second*, that the property should then be equally divided between them. This equality would certainly be defeated, if the defendant Hannah were permitted to share equally in the proceeds of square 179, and in addition to receive the whole of the proceeds of square 199. It seems to us altogether improbable that the children of the first wife would have entered into this arrangement, without an understanding that they were also to share in the proceeds of the homestead.

*The decree of the court below is, therefore, reversed, and the case remanded for further proceedings in conformity with this opinion.*

Mr. Justice Brewer and Mr. Justice White dissented from this opinion.