## LOGUE v. LANGAN.

### (Circuit Court of Appeals, Eighth Circuit. November 16, 1906.)

#### No. 2,254.

1. SPECIFIC PERFORMANCE—PAROL GIFT.

Equity will enforce a parol gift of land, if accompanied by possession, when valuable improvements have been made by the donee on the strength of and in reliance on the gift, provided the evidence both as to the existence of the contract and its terms and conditions is cogent, clear, and unequivocal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 132, 133.]

2. SAME—PART PERFORMANCE—PAROL GIFTS.

Part performance, or the making of valuable improvements, relied on to take a parol gift of land out of the statute of frauds, must be such as to indicate an acceptance of the gift on the terms on which it is alleged to have been made and such as are clearly referable to no other arrangement or understanding.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 120, 132, 133.]

3. SAME—EVIDENCE.

In a suit to enforce an alleged parol gift of land, complainant testified that she moved on the land at her brother's request and that he told her he would give her the land for a home; that he wanted her to live there, and would execute a deed when he got to it; and that he expected one-third of the crops until such time as he gave the deed, which he died without executing. The evidence was uncertain whether he intended to convey the land in fee, or only to make complainant a tenant for life, for a term of years, or at sufferance; nor did it appear whether he intended to make a present gift or one effective in the future. Complainant lived

on the land until after her brother's death, rendering to him one-third of the crops, which she also rendered to his executor after his death, and only expended about $150 on the premises in repairing fences, papering rooms, etc. *Held,* that such evidence was insufficient to establish a parol gift of the land enforceable against his personal representative.

Appeal from the Circuit Court of the United States for the District of South Dakota.

S. H. Wright (Joe Kirby, on the brief), for appellant.

A. H. Orvis (L. B. French, Frank R. Aikens, and Harold E. Judge, on the brief), for appellee.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. This was a bill to enforce the specific performance of a parol contract to convey land. The appellant, who was complainant below, alleges in her bill as follows: "That on or about the month of April, 1896, Hugh Langan, now deceased, * * * proposed (orally) to this complainant that if she would remove from the place where she was then residing and make her home upon a certain tract of land then owned by him, to wit, the northeast quarter of section 33, township 96 north, of range 52, situated in Turner county, South Dakota, and reside there permanently, and would pay him, the said Hugh Langan, one-third of the crops raised thereon, he would give her the said land, and would make her a deed therefor as soon as he could get around to it, and if he did not make her a deed to said land he would leave it to her in his will, and that, when he could get around to the making of the deed or will to her, the payment of one-third of the crops raised on said premises should cease." That she then and there accepted the proposition, and removed from the place where she had theretofore resided, and took up her residence upon the quarter section as proposed, and has ever since resided thereon. That she has since then cultivated the land and turned over to Hugh Langan or his representatives one-third of the crops raised thereon in accordance with the proposition made. That she made some improvements upon the place, amounting in the aggregate to about $150, in the confident belief that the place was ultimately to be hers. That Hugh Langan died in 1902 without having made a conveyance of the land to her, or without devising the same to her by his last will. That defendant, James A. Langan, is the executor of the estate of Hugh Langan, and sole devisee of all the real estate including the quarter section above mentioned, which was owned and possessed by Hugh at the time of his death. The prayer is that defendant be required to make a good and sufficient deed to complainant transferring to her the land described. The answer denies on information and belief the making of the contract, and avers that the described quarter section was not owned by Hugh Langan in his lifetime, but was owned by the firm of Langan Bros., composed of Hugh, the deceased, and defendant; that Hugh had no right or authority to make any agreement with respect to the disposition of the land without co-operating with defendant; that complainant had occupied the quarter section in ques-

tion, not under any contract for a conveyance thereof to her, but solely as a tenant of Langan Bros., and with no rights other than those of such tenant.

The facts as disclosed by the proof appear to be that complainant was a sister of Hugh and James Langan. She was impecunious, and they were well-to-do farmers. She, with her family, consisting of an invalid husband, two daughters, and a son, had for some years prior to 1896 resided on a farm belonging to Hugh Langan in South Dakota. In 1896 she says her brother Hugh told her he wished she would move to another farm, mentioning the quarter section which is the subject of this controversy. Hugh and his brother James were copartners, and together owned all the land standing in the name of either. The portion of the quarter section in question, containing 20 acres, on which the residence and outbuildings are located, stood in the name of James, and the balance (140 acres) stood in the name of Hugh. The principal evidence claimed to constitute a contract is given by the complainant herself. She testified that after she had lived on one of Hugh Langan's farms for a period of about seven years, and on the occasion of his telling her he wanted her to move to another farm consisting of the quarter section above described, he said, in the language of the witness, "that he would give me this for my home—the quarter—and wanted me to live on it. That is the reason I moved here." She said she moved there about six weeks after that conversation, and that after she moved into the house her brother Hugh said "he wanted to make the house comfortable for me; that he expected a share—one-third—of the crops until such time as he could get around to give me a deed to the land—deed to the property; that he would build to the house whatever I wanted. It didn't make any particular difference to him." She said she told him the house was big enough for her, but that he said before he died maybe he would like it bigger; that he wanted to build a lot to the house, but she thought he was giving enough to give it, and didn't want him to do it. Her testimony is the only direct evidence of the so-called agreement. Several witnesses were called by her who testified to certain admissions made at a later time by Hugh. For instance, John O'Donnel testified that he was riding with Hugh Langan at one time when he told him that he was going to move complainant and her family to the place now in controversy, and that it would be "more convenient for the old folks to live there, and he wished to see them live on that place." The witness said at that time he asked him the following question: "You will give Mrs. Logue this place?" and that he said: "Well, he could afford to, and that he intended that it should be her home, and that he would not have to remove her again, but that his two brothers were as well entitled to help her as he was; that is, James and Daniel Langan." One Swan Eckberg testified in behalf of complainant that Hugh Langan once told him that he had bought the farm for Mrs. Logue, and had done this for her "because he never had done much for her, and that he was going to give her this property, as she had always been his best sister." Mrs. Newton testified

that Hugh Langan told her that "she [the complainant] had not done so well as the rest had done, and through sympathy and good feeling he wanted to do this for her; that he intended to give Mrs. Logue a farm, 160 acres." Mr. Voutrobec testified that Hugh Langan once told him that the place belonged to Mrs. Logue; that he asked Hugh whose place that was, and he told him it was Mrs. Logue's house. Emma Logue, the daughter, testified that after they had moved to the quarter section in question Hugh Langan said, on coming to the place and finding it somewhat dilapidated, "that he was going to fix the place up for me." She said she told him it was plenty good enough for her, but that he insisted on building a porch and a pantry onto the kitchen and a bedroom on the north of the house. She also testified that on another occasion Hugh came to their home and said to her mother: "You didn't make a very good move in regard to the house. The house is not as good as the house we moved from." And he says: "I am going to fix it up comfortably for you, because I am going to give you this for a home, and I will make you a deed to it as soon as I can get around to it." The foregoing fairly discloses the character of evidence relied on by complainant.

It appears that the quarter section in question was occupied by the complainant with her family until the death of Hugh Langan in 1902 and to the present time, and that she always accounted to Hugh or his brother for one-third of the crops raised on it annually. Section 1311 of the Revised Civil Codes of South Dakota (1903), where the land in question is situated, is as follows:

"No agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum therof, be in writing, and subscribed by the party to be charged, or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

This statute, commonly known as the "statute of frauds," is an expression of a well-understood equitable rule that part performance of a parol contract for the sale of lands removes the bar of the statute of frauds. Equity also enforces a parol gift of lands, if accompanied by possession, when valuable improvements have been made by the donee on the strength of and in reliance upon the gift. Neale v. Neales, 9 Wall. 1, 19 L. Ed. 590; Riggles v. Erney, 154 U. S. 244, 14 Sup. Ct. 1083, 38 L. Ed. 976; Irwin v. Dyke, 109 Ill. 528; Welch v. Whelpley, 62 Mich. 15, 28 N. W. 774, 4 Am. St. Rep. 810. To warrant a decree for the specific performance of a parol contract, whether of gift or otherwise, for the conveyance of land, the evidence must be cogent, clear, and unequivocal, both as to the existence of the contract and as to its terms and conditions. Story's Eq. Jur. vol. 2, § 764; McKee v. Higbee, 180 Mo. 263, 299, 79 S. W. 407, and cases cited. The part performance or the making of valuable improvements relied on by complainant to take her case out of the statute of frauds must be such as indicates an acceptance of the gift on the terms on which it is alleged to have been made, and such as are fairly referable to no other arrangement or understanding. Neces-

sarily, therefore, they must be consistent with no other theory than that of an absolute gift, which is the only theory on which complainant proceeds in this case. Williams v. Morris, 95 U. S. 444, 456, 24 L. Ed. 360; Sitton v. Shipp, 65 Mo. 297; Emmel v. Hayes, 102 Mo. 186, 14 S. W. 209, 11 L. R. A. 323, 22 Am. St. Rep. 769; Phillips v. Thompson, 1 Johns. Ch. 131; Cole v. Potts, 10 N. J. Eq. 67.

How do the facts of the present case respond to these several rules? The evidence of the alleged agreement is not clear or convincing. The complainant's version of the conversation, which she says embodied the agreement, taken in connection with the circumstances attending it, leaves it doubtful whether Hugh Langan intended to provide a home for his sister and her family by conveying the land to her in fee or by making her a tenant for life, for a term of years, or at sufferance; and, if by either of the methods just suggested, a doubt exists as to when and on what terms the conveyance was to be made. More than this, the evidence discloses an uncertainty whether her brother intended a present gift or to express a general purpose to be effective in the future or not, according to his judgment concerning his sister's best interests and his own circumstances at the time. The evidence of Hugh Langan's admissions to complainant's neighbors consists of loose declarations of a general, fraternal, and benevolent character quite consistent with the intention to make a provision for a home for his sister in any other way than that now claimed by her. Their evidence generally relates to admissions of Hugh about his purpose to make some provision in the future for his sister, rather than about what had been done in the past. His chief purpose, as disclosed by all the evidence, seems to have been to provide his sister a comfortable home, and also to provide an opportunity for the members of her family to make their own living by cultivating the farm. He very likely entertained the idea that the husband and three reasonably healthy children would get on better if afforded the opportunity and confronted with the necessity of doing some work for their own living. This purpose could be well subserved by permitting them to live on the farm indefinitely, while the title remained in him, and requiring them as a stimulus to exertion to account to him for a portion of the crops as a consideration for his kindness. In consideration of the foregoing we are of opinion that the proof of the contract as alleged to have been made lacks that degree of certainty requisite to its enforcement in equity.

Moreover, the evidence of part performance or of making substantial improvements is not, in our opinion, sufficiently definite or specific to take the contract, if made, out of the protection of the statute of frauds. Whatever was done by complainant in either of these ways does not appear to be clearly and unmistakably referable to an obligation to make a gift of an inheritable estate. The provision requiring payment of an annual rental points to the probability that the creation of the relation of landlord and tenant was intended. The provision requiring complainant to remove from her old habitation and take possession of the quarter section in question is explained by the proof to have been inspired by a brotherly disposition on Hugh's part to ameliorate the condition of his sister and her family, rather than to have

been made as a condition to a gift of an absolute estate. The evidence showing expenditures by complainant has no relation to any express condition contained in the supposed agreement. Neither is it clearly referable to a purpose on the part of the complainant to improve her own freehold estate. The evidence rather indicates that Hugh himself intended to make such improvements on the place as would render it thoroughly comfortable for his sister. The proof shows that all she expended during the seven years while she remained there was about $150, and that this was expended in repairing fences, papering rooms, and the like. Such trifling expenditures for such purposes are not only possibly, but probably, referable to motives other than the one now claimed by complainant of improving her own estate. A sense of gratitude to her brother for his kindness, or a commendable disposition to make her surroundings a little more attractive than they otherwise would be, might tempt her to make such trifling outlays. The fact that the land in question belonged, not to Hugh, but to him and his brother as copartners, and that the title to the 20-acre tract upon which the residence and outbuildings were located stood in the name of his brother, tends strongly to indicate that he did not in 1896 intend to bind himself irretrievably to make a conveyance in fee simple of the land to his sister. He could not do so, and that is some reason why he would not undertake to do it.

Moreover, there is strong reason to believe that complainant never considered that she had a right to such a conveyance until about the time this suit was instituted, in January, 1904. From and after the events and declarations connected with her removal to the land in question in 1896, and until the death of Hugh Langan in 1902, there is no substantial evidence of any claim to legal ownership by her. She went on from the beginning of her occupancy of the place, accounting to her brother Hugh until his death for one-third of the crops annually raised on the place; and, what is a significant fact in apparent disharmony with her present contentions, she continued thereafter to account to the executor of his estate for the annual rental until this suit was instituted. She must have known, soon after the death of Hugh, that he had not devised the land to her, and, according to her claim, she then, at the very latest, had the legal right to it. The payment of the reserved annual rental for two years thereafter is so inconsistent with her present claim, when considered in connection with the doubtful evidence in support of it, as to effectually discredit it.

We think it sufficiently appears from what has been said, without discussing some other questions ably argued by counsel, that complainant shows no right to equitable relief, and that her bill was properly dismissed by the Circuit Court. Its decree is accordingly affirmed.