**HOLLEY et al. v. MUCHER et al.**

No. 5948.

Court of Civil Appeals of Texas. Texarkana.

Aug. 10, 1942.

Rehearing Denied Oct. 1, 1942.

Lasseter, Simpson, Spruiell & Lowry, of Tyler, Wherry & Casebier, of Quitman, and Hallie B. Bell, of Macon, for appellants.

Clower, Bezoni & Wilson and J. V. Fleming, all of Tyler, W. H. Sanford, of Dallas, Saye & Saye and H. P. Smead, all of Longview, Jones & Jones, of Mineola, T. J. Ramey, of·Sulphur Springs, Neill & Graham, of Tyler, John W. Ford, of Kilgore, R. B. Howell, of Winnsboro, and Robt. F. Higgins, E. E. Townes, and R. E. Seagler, all of Houston, for appellees.

WILLIAMS, Justice.

In this trespass to try title action, appellants W. F. Holley and others, plaintiffs below, the heirs of Mollie Holley, deceased, sought to recover of appellees, Clarence Webb and Donnie Jennings, defendants below, an undivided one-fourth interest in a 105.9-acre tract situated near Hawkins, Wood County. Other plaintiffs and defendants holding or asserting mineral and leasehold interests were severed prior to submission of the case to the jury, and to enumerate them or their pleadings is unnecessary.

Above tract, together with two 83-acre, tracts, constituted the community property of B. F. Webb and Mattie, his wife. Two children were born to this marriage, namely, Lewis Webb and Mollie, who mar-

ried a Holley. The parents conveyed in 1913 to Lewis one of the 83-acre tracts, and about 1914 Mollie Holley received a conveyance from her parents to the other 83-acre tract, called the Anderson place. The parents retained the 105.9-acre tract which they continued to use as their homestead until their respective deaths. Mattie Webb died intestate in 1921, and B. F. Webb died testate in 1934. Under the terms of his will, B. F. Webb bequeathed the 105.9-acre tract to Clarence Webb and Donnie Webb Jennings, two of the children of Lewis Webb. Mollie died intestate in 1927. Lewis Webb died intestate in 1940.

Defendants urged as a defense that prior to the death of B. F. and Mattie Webb, the parents entered into a partition agreement with Lewis and Mollie, under which each child should take an 83-acre tract in lieu of the expectant interest each had in above-mentioned community estate of their parents, with the 105.9 acres to be retained by the parents as their homestead and to go and pass to the survivor of the community estate of B. F. and Mattie Webb, to the exclusion of said children; that pursuant to said agreement, the possession of an 83-acre tract each was delivered to and received by Lewis and Mollie, and accepted by them in full of their expectant interest in the estate of their parents. Defendants alleged that this agreement was in writing; and, pleading in the alternative, that it was orally made with part performance. Defendants further set up that the partition or settlement agreement was confirmed by Mollie after the death of her mother in 1921, and same was recognized and acquiesced in by the heirs of Mollie after the latter's death in 1927; and that because of the acts of plaintiffs and those under whom they claim, plaintiffs are now estopped to deny said partition agreement.

The evidence supports the claim of appellees as found by the jury in response to special issue No. 1, that "prior to or at the time of the delivery of possession of the 83-acre tract (Anderson place) to Mollie that it was agreed by and between Mollie and her parents that she would accept the same in full settlement and satisfaction of her expectant interest in the community estate of her parents." Possession of the Anderson place was delivered to Mollie in 1914, and she so retained it until her death. Possession of the other 83-acre tract was delivered to Lewis who sold it in 1921 or 1922. The evidence is silent of any agree-

ment in writing between these parties prior to or at the time possession of the Anderson tract was delivered to Mollie. It is thought and we so construe the evidence, that the agreement inquired about in special issue No. 1 and the jury's answer thereto relates to an agreement resting in parol.

There is evidence in the record which reflects that shortly after the death of the mother (Mattie) in 1921, B. F. Webb, Mollie and Lewis made a written agreement "with respect to the division of those lands", and according to Mrs. Kirkpatrick who claimed to be present, "It was the agreement to take this land, you know, and them not interfere with 105 acres left in the homestead of Mr. and Mrs. Webb; and the one that died first, it fell to the other one." "She (Mollie) was willing to take this Anderson place for her part of this land." "Buddy (Lewis) was willing to take the Crow place (the other 83-acre tract) for his division of the land." "Ben was to get the old homestead place, the 105 acres,—old man Ben Webb himself." The agreement "was written with pen and ink, just on ordinary paper"; "J. A. Minchew (deceased) witnessed that agreement"; "I heard it read"; "I saw the three parties sign it." Q. "Did you hear any conversation there at that time * * * as to any previous agreement, prior to Grandma Webb's death, as to possession and use or division of the land?" A. "Before Grandma Webb died? Yes, sir. There was an agreement with them that they was satisfied with the part of the land that their father and mother had given them." The alleged written agreement had been lost or destroyed at the time of the trial. In response to special issue No. 2 the jury found that after the death of her mother, Mollie agreed in writing with her father that the Anderson tract delivered to her in 1914 should be and represent her full share in the interest of her mother in the community estate.

In May 1928, after the death of Mollie, B. F. Webb and Lewis Webb executed and delivered to the heirs of Mollie, plaintiffs here, what may be termed a deed of replacement. It describes the Anderson place. Such portions of same pertinent to the matters inquired about in special issues No. 1 and No. 2 are as follows:

"This conveyance being this day made and executed by us — for the purpose of perfecting title of said above named vendees to the above described tract of land * * * as the children and heirs at law

of their deceased mother, Mollie Holley, * * * that tract of land herein conveyed, having been heretofore, to-wit, on the 4th day of January A. D. 1914, conveyed to the said Mollie Holley by B. F. Webb and his then wife, Mattie Webb, now deceased. Under and by virtue of said conveyance the said Mollie Holley immediately went into possession of said land * * * and had and held peaceable, continuous and adverse possession of same until the date of her death, using and enjoying the same and paying all taxes thereon, claiming the same under said deed from her father and mother, * * * which said deed was never offered for record until after the death of the said Mrs. Mollie Holley, and same could not and cannnot be recorded on account of defective acknowledgment and lack of proper acknowledgment, not discovered until said deed was offered for registration by the heirs of Mrs. Holley. * * *"

In response to special issue No. 3 the jury found that the heirs of Mollie accepted at that time such conveyance in full settlement and satisfaction of their interest, if any, in the community estate of B. F. and Mattie Webb.

Mrs. Mollie Holley was a married woman living with her husband at the time inquired about in special issue No. 1. She was a widow at the time inquired about in special issue No. 2. The deed executed by the parents to Lewis Webb is absent any stipulation that it was executed in pursuance of any agreement of partition or relinquishment. The 1914 deed into Mollie Holley mentioned in the deed of replacement was not produced. There is no statement in the replacement deed, dated in 1928, to the effect that the consideration was in full settlement of the grantee's interest in the community estate of F. B. and Mattie Webb. No written conveyance was made by Lewis Webb or Mollie Holley to their mother or father to the 105-acre tract. Bearing on the matters inquired about in all three issues is the testimony of witnesses who claimed that B. F. Webb stated to them that he had given Mollie and Lewis each an 83-acre farm and "he was to have the 105-acre tract"; and the clause in his will reading, "That all my property shall be given to Donnie Webb and Clarence Webb and that said Donnie and Clarence shall pay to Lewis Webb and the heirs of Mollie Holley $5, as the said Lewis Webb and Mollie Holley have already received their part of the community property." This will was executed in 1932 about the time the devisees named moved to the testator's home and upon consideration that the devisees would care for and support him, he then being in his late sixties. After his death in 1934, the will was timely probated, and the devisees continued in possession of the 105-acre tract. This suit was filed December 30, 1940. Upon above jury findings, no others being submitted, the court entered judgment which decreed that plaintiffs take nothing by their suit against defendants.

Appellants urge error in the submission of special issue No. 1, and the refusal of the court to instruct a verdict for plaintiffs. Appellants assert (1) that the agreement inquired about in this issue amounts to an oral relinquishment of a child's expectancy in the community property of her parents, which is unenforceable because of the statute of frauds. Article 3995 § 4, R.C.S.1925; and (2) that at the time of the making of the purported oral agreement inquired about in issue No. 1, Mollie Holley was a married woman, and an affirmative answer to the issue would not divest her of her interest in the land involved in this suit; because such an agreement without the joinder of her husband and privy acknowledgment is unenforceable. Article 1299, R.C.S. of 1925.

Appellees take the position that (1) the agreement evidences a partition of the land and that a partition of lands resting wholly or partly in parol is valid and is not violative of the statute of frauds in Texas; and (2) that there are present all the essential elements of an equitable estoppel. Appellants assert that this rule of law is not applicable under this record because at the time of the alleged oral agreement, Mollie Holley then was not a cotenant with her parents in the community estate and she was not then entitled to possession of any part of the land, citing Davis v. Agnew, 67 Tex. 206, 2 S.W. 43, 2 S.W. 376; Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Cave v. Wells, 319 Mo. 930, 5 S.W.2d 636; 32 T.J. p. 160; 11 T.J. p. 410, § 2; 40 Am.Jur. p. 22, § 28; and that the alleged agreement evidences a relinquishment of an interest in land, afoul of the statute of frauds, supra, and under this record the doctrine of an equitable estoppel cannot be invoked against a married woman, citing Stephens v. Shaw, 68 Tex. 261, 4 S.W. 458; Riddell v. Riddell, 70 Neb. 472, 97 N.W.

609. In view of the jury's findings to special issue No. 2, we think it unnecessary to construe or designate the alleged oral agreement as a partition or a relinquishment, or a combination of both. It is to be noted that under the jury's finding to issue No. 1, they entered into a contract. If and when same became effective, it related to an interest in land.

"It is not an open question that an expectant or contingent interest of an heir is an appropriate subject of contract, and that a conveyance by expectant heirs of their future contingent estates will be enforced when fairly made upon a valuable consideration." Daggett v. Barre, Tex.Civ.App., 135 S.W. 1099, 1101, citing Hale v. Hollon, 90 Tex. 427, 39 S.W. 287, 36 L.R.A. 75, 59 Am.St.Rep. 819. See also Martin v. Martin, Tex.Civ.App., 222 S.W. 291; Wilson v. Beck, Tex.Civ.App., 286 S.W. 315; Hammett v. Farrar, Tex.Com.App., 29 S.W.2d 949; 16 Am.Jur. p. 932, § 152; 47 C.J. p. 267; 32 T.J. p. 154; 28 A.L.R. 428; Pomeroy's Equity, 1941 Ed., § 1287.

■ The essential elements of an equitable estoppel are present under the foregoing rule. They are present under the facts of this record. It is without dispute that possession of the Anderson tract was delivered by the parents to and received by Mollie Holley years prior to her parents' death, and its use and possession so continued in her and her heirs from 1914 until June, 1928, at which time the latter sold the same and appropriated its proceeds. Its possession was delivered pursuant to an agreement she had with her parents that she would accept the same in full settlement and satisfaction of her expectant interest in the community estate of her parents. In this act of delivery of possession by the parents (which plaintiffs in their acceptance of the replacement deed acknowledge was conveyed by deed in 1914 to their mother), such verbal agreement was performed in part. The fact that Mollie Holley, who held no title and was not entitled to possession of any part of the community estate, received a farm years prior to the time she may have inherited a share in the community constitutes a valuable consideration. The evidence reflects that the Anderson tract and the 105.9-acre tract were approximately of equal value, and if any difference, the Anderson tract was more desirable. Premised upon above facts and the finding of the jury to issue No. 2, that Mollie Holley agreed in writing after her mother's death (the said Mollie Holley then being a widow) that the Anderson tract should represent her full share in the community, her heirs are now estopped to assert title in any interest in the 105-acre tract. Galbraith v. McLain 84 Ill. 379; Riggles v. Erney, 154 U.S. 244, 14 S.Ct. 1083, 38 L.Ed. 976; authorities collated in Re Catherine Garcelon's Estate, 104 Cal. 570, 38 P. 414, 32 L.R.A. 595, 43 Am.St.Rep. 134; Walter v. Hoffman, 267 N.Y. 365, 196 N.E. 291, 101 A.L.R. p. 923; 31 C.J.S., Estoppel, § 110, p. 350, Sec. 110; Pomeroy's Equity (1941 Ed.) Secs. 921, 1409; Wilson v. Beck, supra; Martin v. Martin, supra; Humble Oil & Refining Co. v. Clark, 126 Tex. 262, 87 S.W.2d 471.

■ Appellants assert that there was no competent evidence to authorize the submission of special issue No. 2. They contend that sufficient proof was not made of the loss of the written agreement inquired about in issue No. 2 to permit proof or evidence of its contents, citing the text in 28 Tex.Jur. p. 398, § 7. The witness Mrs. Kirkpatrick last saw the instrument in the hands of B. F. Webb. Donnie Jennings testified that B. F. Webb prior to his death turned over to her the deed and papers to the place; that she put the papers in a trunk at that time; that later she "got rid of my trunk and put them in a suitcase"; later, "I got my suitcase stolen, papers and all"; "the suitcase contained the papers that Grandpa gave me." Mrs. Jennings was the surviving member of the home and household of B. F. Webb and took care of him and the home for two years prior to his death and remained in possession subsequent to his death. After this preliminary inquiry, the court permitted Mrs. Kirkpatrick to testify, over objection of appellants, to the contents of the alleged written instrument. This preliminary inquiry was addressed to the discretion of the trial judge and we do not think above facts would authorize us in holding that he abused his discretion. McCormick & Ray's Evidence, § 716. It is not thought that Mrs. Kirkpatrick's testimony relative to the contents of the written instrument is subject to the contentions of appellants that it was a mere conclusion of the witness.

The conclusions reached render unnecessary a discussion of appellants' claim that there was no competent evidence to support the jury's finding to issue No. 3.

We have carefully examined the other two assignments of error and they are overruled.

For the reasons indicated, the judgment of the trial court is affirmed.