ANN E. GAWTRY ET UX. *v.* ELMER B. ADAMS, Judge.

February 23, 1881.

1. A decree rendered against a married woman charging her separate estate with the payment of her promissory note and directing a sale of the realty charged, is a judgment by which a debt is recovered, within the meaning of the statute.

2. In such a case, the appeal-bond, to operate a stay of execution, must be in double the amount of the judgment.

APPLICATION for prohibition.
*Dismissed.*
J. M. & C. H. KRUM, for the petitioners.
BALDWIN, HAMILTON & N. HOLMES, for the defendant.

LEWIS, P. J., delivered the opinion of the court.

The petition shows that T. W. Johnston sued the petitioners, Ann E. Gawtry and William M. Gawtry, her husband and trustee, in the St. Louis Circuit Court, for the purpose of charging the wife's separate estate with the payment of a promissory note executed by the petitioners; that at the December term, 1880, the court rendered a judgment, or decree, ascertaining that the sum due to the plaintiff was $12,546.71, and directing that the real estate

described in the judgment be sold to satisfy the same; that during the same term the petitioners applied for an appeal to the St. Louis Court of Appeals, which was granted, and the appeal-bond filed by the petitioners was at the same time approved by the court; that, notwithstanding the appeal so allowed, a copy of the decree was by the clerk of the Circuit Court delivered to the sheriff of the city of St. Louis, who, by authority thereof, has advertised that he will, on the first day of March, 1881, sell the said real estate to satisfy the said judgment; that the petitioners applied to the Circuit Court for an order directing the clerk to recall the said copy of the decree, which was denied; that they thereupon applied for an order directing the sheriff to refrain from making said sale, which order was also denied by the court. The petitioners pray for a writ of prohibition, to stay any further proceedings by the Circuit Court in enforcing the judgment appealed from.

In a return upon our rule against the respondent to show cause against the issuing of a peremptory writ, the facts above stated are substantially set forth, with the addition that the appeal-bond filed by the petitioners and approved by the court was for the penal sum of only $1,000. The petitioners filed a motion to quash this return as an insufficient answer in law.

The petitioners contend that the appeal-bond in the sum of $1,000 was sufficient to operate a *supersedeas*, under sect. 3713 of the Revised Statutes. It is there provided that the allowance of an appeal " shall stay the execution * * * when the appellant, or some responsible person for him, together with two sufficient securities, to be approved by the court, shall, during the term at which the judgment appealed from was rendered, enter into a recognizance to the adverse party, in a penalty double the amount of whatever debt, damages, and costs, or damages and costs, have been recovered by such judgment, together with the interest that may accrue thereon, and the costs and damages

that may be recovered in an appellate court upon the appeal, conditioned that the appellant will prosecute his appeal with due diligence to a decision in the appellate court, and shall perform such judgment as shall be given by such court, or such as the said court may direct the Circuit Court or St. Louis Court of Appeals to give, and if the judgment of such court, or any part thereof, be affirmed, that he will comply with and perform the same, as far as it may be affirmed, and will pay all damages and costs which may be awarded against the appellant by any appellate court.''

The petition states that a copy of the decree was delivered to the sheriff, by virtue whereof he proposes to sell. The return alleges that '' execution in due form was issued to the sheriff of the city of St. Louis for carrying said decree into effect.'' For the purposes of this motion to quash, we must take the allegations in the return preferably to those of the petition.

It is argued that, except as to costs, there is no personal money-judgment in this case which can be made the subject of an appeal-bond for double its amount, within the intent of the statute, and hence a bond for $1,000 is more than sufficient to effect a stay of execution; that there is only a decree in equity directing the sheriff to do a certain thing, to wit: to sell the property and return the proceeds for application to the plaintiff's claim; that this act of a ministerial officer cannot be contemplated in the condition of an appeal-bond, which requires that the appellant shall perform the judgment in a certain contingency, and therefore the sureties would not be bound in any event for the performance of this act, nor yet for the payment of the principal debt; that the land itself is the plaintiff's permanent security, and the force of the decree goes no further than to the payment of so much as the sale will produce. Personal sureties in an appeal-bond could not be compelled to add anything to such proceeds, if insufficient, and therefore the law has no need of them. The appeal, *proprio vigore,* suspends the

force of the decree, and the Circuit Court exceeds its powers in authorizing the sheriff, through a copy placed in his hands, to enforce the decree notwithstanding.

Technically speaking, we have no such thing in Missouri as a decree in equity. Every final determination of the rights of the parties in an action is a judgment. Rev. Stats., sect. 3672. The use of the word "decree" is very often convenient and proper, as indicating the specific character of a judgment rendered; but it has no place in the statute, and represents nothing but what may with greater propriety be called a judgment. There is no authority for saying that the final adjudication in the present instance is, by reason of its peculiar terms, anything more or less than a judgment. It is, therefore, literally within the meaning of the statute concerning appeals, and must, in all its incidents and consequences, be controlled by the provisions of that statute, wherever it is possible to apply them.

The test, then, of sufficiency in amount of the appeal-bond in this case to operate a stay of execution must lie in the application of the words, "whatever debt, damages, and costs, or damages and costs, have been recovered by such judgment." What debt, if any, was "recovered" by the judgment? The petitioners say that there was none at all. But we cannot so understand the law.

The doctrine once prevailed, to a certain extent, that the undertaking of a married woman to bind her separate property to the discharge of an obligation was a mere exercise of the power of appointment, having none of the elements of contract, and creating nothing analogous to a personal indebtedness. If such were the law, it might be plausibly maintained that no "debt," in the present case, was "recovered" by the judgment. But the doctrine has long been exploded, and obtains nowhere. It is established that equity regards a married woman, with relation to her separate estate, as a *feme sole*, and capable of making a contract enforceable upon it. She may thus owe a debt, the payment

whereof equity will compel from her separate property, though the law refuses to rcognize its sufficiency to demand a personal judgment. *Hooton* v. *Ransom*, 6 Mo. App. 19. The matter here in controversy between the original parties was such a debt, arising upon a promissory note executed by Mrs. Gawtry and her husband. Was this debt "recovered" by the judgment? The law dictionaries inform us that to *recover* is "to obtain by means of judicial proceedings." "*Recovered*, in its general sense, imports a payment compelled by judicial proceedings." Abb. L. Dic. "*Recover*, to obtain by course of law ; to succeed in a trial." Burrill's L. Dic. Here was the payment of a debt compelled by judicial proceedings. The remedy sought by the plaintiff was obtained by the same means and by course of law. The plaintiff succeeded in the trial of the dispute as to whether the petitioners were indebted to him, or not. In other words, the debt was recovered by the judgment of the court. This brings the case within the language of the statute, and we are unable to perceive how an exception can be supposed to arise upon the fact that the judgment is to be enforced under the limitations which equity imposes. The execution is to be special, and not general. But the judgment recites that the principal sum mentioned in the note sued on is " due the plaintiff," and it is " ordered, adjudged, and decreed that the said sum of $12,546.71 be paid to the plaintiff," etc. Nothing is wanting to an identification of this sum as that of the " debt " which has been " recovered " by the judgment, and which, with certain additions, must therefore be doubled in the penalty of the appeal-bond in order to satisfy the statute and effect a stay of execution.

We are not referred to any authority for the proposition that the sureties in an appeal-bond will not be held responsible, in this case, upon an affirmance of the judgment, for any residue of the debt remaining unsatisfied after a sale of the land. If this were strictly true, it would only furnish an argument against the inutility of the law requiring such

sureties.   But with this we have nothing to do.   Where the language of a statute is plain, and free from ambiguity, so that there can be no doubt of the legislative intention, the courts must carry it into effect as they find it, whatever they may think of its inutility or inexpediency.   But one interpretation is possible for the plain English words of the statute before us.   Were we to adopt the application, or rather the non-application, of them which is insisted upon for the petitioners, we would be repealing instead of construing the law.

But we cannot admit the truth of the petitioners' proposition.   The appeal-bond is conditioned that the appellants shall "perform" the judgment, and this includes every part thereof.   Part of the present judgment is that the plaintiff be paid the entire amount of the ascertained indebtedness out of the separate estate of the *feme covert* defendant.   If the sale show a deficit, this would result from the execution, and not from the judgment.   The stay of execution might, in the depreciation of property and the accumulation of interest, largely increase the chances for a deficit.   The plaintiff is delayed of his remedy, and it only harmonizes with the general policy of the law, that when one is so hindered of his rights, without fault on his part, and against his consent, the security shall be made better for his ultimate enjoyment.   That the land remains as a fixed security, argues nothing.   A judgment defendant may be worth millions of dollars in real estate, without encumbrance, yet he can no more have a stay of execution without an appeal-bond, signed by two sufficient sureties, in double the amount of the judgment, than he could if he had not an acre.   A judgment may be utterly worthless, because of the defendant's insolvency ; yet this will furnish no reason why the plaintiff may not demand that it be made available by a well secured recognizance, if the defendant elects to delay him by an appeal, with stay of execution.   So, in the present case, the land may be insufficient to satisfy the judgment debt.

But this would only furnish a reason why the plaintiff should nave better security, if he is to be postponed of his right to make it available as far as it will go.

We are of opinion that a recognizance in the sum of $1,000 was not sufficient, under the statute, to operate a stay of execution upon the judgment under consideration, and that the Circuit Court has committed no excess of jurisdiction in proceeding, through its proper officer, to enforce the judgment by a special execution. The motion to quash the return must therefore be overruled. As the material facts are substantially agreed upon between the present parties, and are insufficient for the remedy sought by the petitioners, their application for a writ of prohibition will be dismissed. All the judges concur.