BELFAST INVESTMENT COMPANY, Appellant, v. CATHERINE CURRY et al.

Division Two, March 30, 1915.

1. **RESULTING TRUST: Insufficient Evidence.** Evidence by a widow that she contributed a part of the money which went to purchase the lot deeded to her husband in 1880, four years prior to their marriage, but not stating how much she contributed,

is wholly insufficient to establish a resulting trust in her to any interest in the title.

2. **STATUTE: Amendment by Revised Bill: Parts Retained and Parts Omitted.** When parts of an existing statute are repeated in a revised bill, those parts are considered as a continuation of the statute, and not as a new enactment; while those parts of the statute that are omitted from the revised bill are treated as repealed.

3. **DOWER: Limitation: Disability of Coverture: Not Part of General Statute.** The dower Statute of Limitations is not a part of the general law applicable to the limitations of actions concerning real estate, and cannot be construed as *in pari materia* with it, but stands alone, and as it makes no exception of coverture as an excuse for delay in asserting dower such disability will not be read into it. So that where the widow married again, the time within which she is barred to assert dower in her deceased husband's land must be determined by Sec. 391, R. S. 1909, and cannot be lengthened out by provisions concerning the disability of coverture found in the general limitation law.

4. ———: ———: **Ten Years: Coverture.** An action for the admeasurement of dower is barred in ten years after the husband's death; and the fact that soon after the husband's death his widow married again and has since been under coverture, did not operate to lengthen the limitation. Such is the meaning of Sec. 391, R. S. 1909, and the courts cannot read into it any exception it does not contain. Her coverture (brought about by a remarriage) has not barred her since 1889 to maintain an action to have her dower admeasured—the same year in which said statute, in its present form, was enacted.

5. ———: ———: ———: **Retrospective Statute.** The General Assembly has power to shorten a limitation, provided a reasonable time is given within which parties affected by it may maintain their actions to assert an existing right. The fact that the husband died and his widow remarried prior to the enactment in 1889 of Sec. 391, R. S. 1889, declaring that suits for the admeasurement of dower must be brought within ten years after the husband's death, will not prevent the application of that statute to her suit for dower in her deceased husband's real estate, especially where it was not begun for more than ten years after the statute was enacted.

6. ———: **Tenancy in Common.** If the heirs of the deceased husband exclusively occupy land in which his widow is entitled to dower and refuse to attorn to her any rents, then their possession becomes adverse to her and she cannot be considered a tenant in common with them.

7. ————: **The Word Recovery: Adverse Possession.** The word "recovery" used in Sec. 391, R. S. 1909, beginning, "All actions for the recovery of dower in real estate," does not mean an action to regain possession of real estate which has already been assigned or admeasured to the widow as dower; it means that if she wishes to assert dower, she must within ten years after the death of her husband bring her action in court for the admeasurement of dower, whether or not the real estate be in adverse possession.

8. ————: **Repeal of Exceptions: Mansion House: Acquiescence of Heirs.** The fact that in the statute (Sec. 391, R. S. 1909) as originally enacted in 1887 there were saving clauses in favor of a widow if she was in possession of the mansion or under legal disability, and that these several clauses were omitted from the revised bill of 1889, strongly indicates a legislative purpose that there should be no exception at all to the requirement that an action for dower must be brought within ten years after the husband's death; but whether it would be within the constitutional power of the General Assembly to penalize a widow by barring her dower in land already in her possession because she fails to bring suit therefor within ten years after her husband's death, or whether the heirs would be estopped from setting up such failure as a bar after they had acquiesced in her exclusive possession, are questions not decided in this case, where the widow was at no time in possession and knew from the time of the final settlement in 1891 that her husband's heirs were in possession and asserting exclusive ownership, and brought no action until 1910.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

AFFIRMED.

*New & Krauthoff, P. E. Reeder* and *Maurice H. Winger* for appellant.

(1) The unassigned dower interest of Mary E. Barrel, formerly Mary E. Griffin, in the property in question, as the widow of Thomas Griffin, passed by quitclaim deed from her to John Bing and from John Bing to the plaintiff. Sec. 346, R. S. 1909; Phillips v. Presson, 172 Mo. 24; Rohrer v. Oder, 124 Mo. 24; Chrisman v. Linderman, 202 Mo. 615. (2) The widow's unassigned dower interest in the premises in

question is not barred by the Statutes of Limitation. Robinson v. Ware, 94 Mo. 678, 688; Sherwood v. Baker, 105 Mo. 477; Null v. Howell, 111 Mo. 273; Harrison v. McReynolds, 183 Mo. 533; Brewing Company v. Payne, 197 Mo. 431; Chrisman v. Linderman, 202 Mo. 615; Johns v. Fenton, 88 Mo. 64. (3) Neither the Act of March 22, 1887, as originally passed, nor the amended Act of 1889, has any application in this case. Robinson v. Ware, 94 Mo. 683; Beard v. Hale, 95 Mo. 16; Long v. Stock Yards Co., 107 Mo. 304; Null v. Howell, 111 Mo. 273; R. S. 1889, sec. 6797; R. S. 1866, p. 749, sec. 32; Cranor v. School District, 151 Mo. 123; Stephens v. Bank, 43 Mo. 388; Paddleford v. Dunn, 14 Mo. 522; Laws 1887, p. 177, sec. 1; R. S. 1889, vol. 2, p. 2229; Walker v. Deaver, 79 Mo. 677; Kimmerly v. Insurance Co., 111 Mo. 206; Sherwood v. Baker, 105 Mo. 476; Mainwaring v. Lumber Co., 200 Mo. 732; Rice v. Fleming, 173 Mo. 49; State ex rel. v. Woodson, 128 Mo. 497. (4) The Statute of Limitation cannot be interposed as a defense by an heir claiming title under a deceased person in an action for dower by the widow of such deceased, or those claiming under such widow, or by tenants in common. Livingston v. Cochran, 33 Ark. 294; Down v. Allen, 78 Tenn. 652; Guthrie v. Owen, 18 Tenn. 339; Cockrell v. Curtis, 83 Tex. 105; Robinson v. Ware, 94 Mo. 687; Sutton v. Cassellege, 5 Mo. 111; Long v. McDow, 87 Mo. 197; LaPeyre v. Paul, 47 Mo. 586. (5) Defendants failed to prove that they, or any of them, had been in adverse possession of the premises for ten years immediately preceding the commencement of this suit. Dalby v. Snuffer, 57 Mo. 294; Ivy v. Yancey, 129 Mo. 501; Robinson v. Clagett, 149 Mo. 153; Johnson v. Pruitt, 32 Mo. 553. (6) The dower interest of the widow, Mary E. Barrell, formerly Mary E. Griffin, in the premises in question was not abandoned by her and her title was not divested by any act on her part shown in evidence. Putnam v. Tyler, 17 Pa. St. 585; Barrett v. Coal Co., 70 Kan.

665; Kreamer v. Voneida, 62 Atl. (Pa.) 518; Norman
v. Corbley, 79 Pac. (Mont.) 1059; Sharkey v. Can-
diana, 85 Pac. (Ore.) 219; Hoffman v. Bell, 61 Pa. St.
444; Bear v. Dewart, 95 Pa. St. 72; Coal Co. v. Wiggin,
68 Fed. 446; Philadelphia v. Riddle, 25 Pa. St. 259;
Bramwell v. Adams, 146 Mo. 70; Trust Co. v. Horn, 83
Mo. App. 114; Petring v. Christer, 90 Mo. 649; 16 Cyc.
732.

*A. N. Adams* and *Scarritt, Scarritt, Jones & Miller*
for respondents.

(1) Plaintiff's action is barred by the act en-
titled, "Dower; Time for Instituting Suit," Laws
1887, p. 177. R. S. 1889, sec. 6607; Harrison v. McRey-
nolds, 183 Mo. 533. (2) Plaintiff's action is barred
under Sec. 391, R. S. 1909. Callaway County v. Nolley,
31 Mo. 393; Seibert v. Copp, 62 Mo. 182; Tice v. Flem-
ing, 173 Mo. 49; Cranor v. School District, 151 Mo.
119; Bick v. Robbins, 131 Mo. App. 670; Brewster v.
Brewster, 32 Barb. (N. Y.) 429; Martin v. Martin, 35
Ala. 560; Sohn v. Waterson, 17 Wall. (U. S.) 596; Ross
v. Duval, 13 Pet. (U. S.) 45; Lewis v. Lewis, 7 How.
(U. S.) 776; Railroad v. Laramie Stock Yards Co.,
231 U. S. 190. (3) Plaintiff's action is barred by the
general Statute of Limitations applicable to real ac-
tions, being Sec. 1879, R. S. 1909, to the effect that "no
action for the recovery of lands . . . shall be com-
menced . . . unless it appear that the plaintiff, his
ancestor, predecessor, grantor or other person under
whom he claims was seized or possessed of the prem-
ises in question within ten years before the commence-
ment of such action." (a) Neither the plaintiff nor
any of its predecessors were seized or possessed of the
premises in question within ten years before the com-
mencement of this suit. 4 Kent Com. (13 Ed.) 61;
Brannock v. Magoon, 216 Mo. 722; Robinson v. Ware,
94 Mo. 678; Kennedy v. Duncan, 224 Mo. 662; 2 Scrib-

ner on Dower (2 Ed.), sec. 27, ch. 20.   (b)   Defendants
and their predecessors have been in adverse posses-
sion of the property for more than ten years before the
institution of this suit.   The possession of the adminis-
trator was adverse to the widow in respect to her
dower.   R. S. 1909, secs. 367, 369, 372, 375.   The posses-
sion of the heirs was adverse to the widow with respect
to her dower.   Conover v. Wright, 6 N. J. Eq. 613;
Berrien v. Conover, 16 N. J. L. 107.   (4)   The widow's
dower, if any existed, was extinguished and conveyed
by the city tax deed to F. N. Phelps.   He thereby ac-
quired the fee simple title to the lot in question, and
that title by mesne conveyances was well vested in the
defendants.   This tax deed preceded in time the quit-
claim deed from the widow under which plaintiff
claims and it follows that the defendants and not the
plaintiff are the transferees of the widow's dower.
Rohrer v. Oder, 124 Mo. 24; Kansas City Charter 1889,
art. 5, sec. 62; Chrisman v. Hough, 146 Mo. 102; Jones
v. Devore, 8 Ohio St. 430.   (a)  The widow is not a
tenant in common or joint tenant in respect to her
dower with the heirs of the deceased husband and the
purchase of this lot from Phelps by Adams and the
heirs did not inure to the use of the widow.   McClana-
han v. Porter, 10 Mo. 746; Walker v. Doane, 131 Ill.
27; Hamby v. Hamby, 165 Ala. 171; Long v. Stock
Yards Co., 107 Mo. 298; Robinson v. Ware, 94 Mo. 678;
4 Kent Com. (13 Ed.) 61.   (b)   There was no fiduciary
relation between Adams and the widow, nor was he
under any obligations to her, and the purchase by him
of an undivided one-half of this property and the con-
veyance of that interest by Phelps to him did not inure
to the use of the widow.

BROWN, J.—Action to establish resulting trust;
to recover dower in real estate; and for an accounting.
Defendants had judgment below and the plaintiff ap-
peals.

Before giving a resume of the pleadings we will recite a history of the title and possession of the real estate in controversy. On May 8, 1885, one Thomas Griffin died in Kansas City, Missouri, seized of the title to lot one in block three in McGee place, an addition to said city, which lot possessed a small rental value. Thomas Griffin left a widow and several brothers and sisters surviving him, but no lineal heirs. Neither he nor his wife ever occupied the lot in controversy as a home.

The widow of said Thomas Griffin married one Alfred Barrell in 1888, and located in Los Angeles, California, where she has ever since resided. Mrs. Barrell testified that shortly after the death of her first husband, Thomas Griffin, she expended $60 for improvements on the lot in controversy. She further testified that she then gave the title papers of the lot to her brother-in-law, William Griffin, with a request that he rent the property and look after it for her. William Griffin engaged one Donnelly to rent out the lot. In May, 1889, Donnelly turned the possession of the lot over to Fred C. Hey, public administrator, together with $86.50 collected as rent. Mr. Hey, formerly public administrator, testified that William Griffin was the only relative of Thomas Griffin living in Kansas City, his other collateral heirs residing in the East. That said William Griffin was very friendly to the widow, Mrs. Barrell, and expressed a desire that she should have the lot. Said William Griffin was dead at the time of the trial.

The administrator, Mr. Hey, made final settlement of the estate of Thomas Griffin in August, 1891. Said settlement showed that on July 1, 1891, he paid $100 of said rents to the widow, Mrs. Barrell. At the close of his administration he turned over the possession of the lot to one George Kumpf, together with a balance in his hands, amounting to $66.08. The settlement indicates that he did not while administrator receive any

moneys, except rents from the lot in controversy, together with the amount turned over to him by Mr. Donnelly. No exceptions were filed to his final settlement.

It does not appear that Kumpf had any lawful authority to assume control of the lot. He says he took charge of the lot and the $66.08 balance in the hands of the administrator because the administrator was in trouble and he (Kumpf) having signed his bond did not want him to get in any deeper. Mr. Kumpf continued to collect rents on the lot in controversy until about 1905 or 1906, when, upon the advice of his attorney, he paid such rent over to the "heirs of Thomas Griffin." He did not know, or could not remember, who those heirs were, but understood that the amount he paid ($394) was needed to purchase or extinguish some tax claims outsanding against the property. Mr. Kumpf further testified that he was under the impression that one Almena A. Archer pretended to be agent for the Griffin heirs. Mrs. Archer was not sworn. The evidence indicates that for several years she rented the property from Kumpf, but there is nothing in the record by which her agency for the Griffin heirs or the widow of Griffin was satisfactorily proven.

Taxes were allowed to become delinquent on the property in controversy for the years 1899 and 1901, for which tax deeds were issued by the treasurer of Kansas City to one F. N. Phelps, dated November 11, 1903. A tax deed was also issued on October 27, 1903, by said treasurer of Kansas City, purporting to convey said property to the Standard Investment Company for taxes of the year 1898. On October 29, 1906, F. N. Phelps brought an ejectment suit against Mrs. Archer, as tenant of the lot in controversy, in which suit Mrs. Barrell, formerly the widow, and the unknown heirs of Thomas Griffin, were made parties defendant. In August, 1907, after the filing of the Phelps suit one A. N. Adams, an attorney of Kansas City,

made a contract with the collateral heirs of Thomas Griffin to protect them against the Phelps suit, for which he was to receive one-half of whatever money or land he might recover for them.

After getting this contract of the collateral heirs, Mr. Adams made a deal with Phelps and the Standard Investment Company whereby they agreed to surrender their respective tax titles in consideration of $394 rent money collected by Mr. Kumpf. Upon receipt of this rent money Mr. Adams caused one-half of the tax titles to be conveyed to himself, and the remainder thereof to the collateral heirs of Thomas Griffin. He also received a deed from the collateral heirs purporting to convey to him one-half of their interests. A very short time before making his contract with the collateral heirs of Thomas Griffin, attorney Adams wrote the following letter to Mrs. Barrell, formerly the widow of Thomas Griffin:

Aug. 9, 1907.

Mrs. Mary E. Barrell,
    Los Angeles, California.
Dear Madam:
    I have been informed that you are the widow of Thomas Griffin, deceased. As you probably know Thomas Griffin was the owner of Lot 1, Block 3, McGee Place, an addition in Kansas City, Missouri. I have been corresponding with the heirs of Thomas Griffin concerning this estate. They cannot give me any information of your whereabouts, but I find from the papers in the administration of the estate of Thomas Griffin that you were, at the time of final settlement, residing in (San Francisco) Los Angeles, California. This lot has been sold for taxes, and the purchaser at the tax sale is now endeavoring to perfect his title. By immediate action I think something can be saved for you as the widow, and for the heirs of Thomas Griffin.
    Will you kindly write me at once upon receipt of this letter and let me know where you are and I will explain matter further.            Very respectfully yours,
                                        A. N. ADAMS.

To this letter Mrs. Barrell replied as follows:

121 N. Avenue 24, Los Angeles, Cal.,
August 14, '07.

Arthur N. Adams, Esq.,
    Kansas City, Mo.
Dear Sir:
    Yours of the 9th inst., rec. and contents noted. In reply
will say that I was the widow of Thos. Griffin and am well
aware of the fact that we did own the lot you have described, in
Kansas City, at 18th and Cherry street. Several years ago,
when I married my present husband, it appears that Mr. Griffin's
folks got angry and tried to keep me from getting the place,
so I gave it up and have not bothered about it any since.
I thought if they needed it any worse than I did they could
have it. Would be pleased to know what became of the place
and how many of Mr. Griffin's heirs are still looking for it.
Awaiting your reply, I am, very respectfully,
                                  MARY E. BARRELL.

Mr. Adams claims to have replied to Mrs. Barrell's letter, but no copy of such a reply was introduced in evidence.

In April, 1909, one James E. Faris, representing the plaintiff (Belfast Investment Company), called upon Mr. Adams with a view of purchasing the land in controversy. Adams informed Mr. Faris of his deed from the collateral heirs, and likewise his deed from the holders of the tax titles, and offered to sell his interest to the plaintiff company for $1500. Mr. Adams loaned Mr. Faris an abstract of title to the lot and called his attention to the fact that Mrs. Barrell had written a letter which he (Adams) had interpreted to mean that she disclaimed any interest in the lot in controversy. After holding the abstract some four hours Mr. Faris for the plaintiff company refused to accept Mr. Adams's offer.

On June 17, 1909, the plaintiff, through an agent, purchased all Mrs. Barrell's title to the lot in controversy, paying therefor $700, and receiving a quitclaim deed.

Thereafter, on September 7, 1910, the plaintiff instituted this action against A. N. Adams and his codefendants, such codefendants being the collateral heirs of Thomas Griffin, deceased.

In the second amended petition upon which the trial below was had it was averred that the lot in controversy was purchased by Thomas Griffin and his wife, Mary E. Griffin (now Mary E. Barrell), in the year 1880, each of them contributing one-half of the purchase price, and that the legal title was taken in the name of said Thomas Griffin under a contract that an undivided half thereof would be held in trust by him for his wife. Said petition also averred the purchase by plaintiff of all the title of said Mary E. Barrell, and prayed that the title to said lot be tried and determined. That all the title held by said Mary E. Barrell be declared vested in plaintiff, and that an accounting be had upon the rents received by defendants and on moneys paid out by them for taxes and the purchase of tax titles, and for all other proper relief.

The answer, in addition to a general denial, pleaded the ten-year Statute of Limitation. The answer also set up certain alleged equitable defenses, which, for the purposes of this opinion, it is not necessary to describe here.

Such other facts as may be found necessary to make clear the issues in this cause will be recited in connection with our conclusions.

I.  Mrs. Barrell, testifying for plaintiff, stated that the lot in controversy was purchased shortly after her marriage to Thomas Griffin, and that she contributed part of the purchase money, but she does not say how much. As a matter of fact the deed to Thomas Griffin shows that the lot was purchased several years before her marriage to him. The evidence entirely fails to sustain plaintiff's claim of a resulting trust, and the plaintiff seems to concede this fact in its brief by resting its case entirely upon the theory that it acquired the dower of Mrs. Barrell, which, under section 4514, Revised Statutes 1889, now section 346, Revised Statutes 1909, she

*Resulting Trust.*

possessed the right to transfer. [Phillips v. Presson, 172 Mo. 24.]

II. If the plaintiff is entitled to recover at all in this case such recovery must be based upon the dower right transferred to it by Mrs. Barrell. If that right is barred by the Statute of Limitation specifically applicable to actions for the recovery of dower in real estate, then the judgment for defendants must be affirmed.

**Dower-Limitation.**

It is apparent that the possession of the administrator Mr. Hey was not adverse to the widow, because he paid to her a part of the rents collected from the property in controversy.

The possession of Mr. Kumpf, which began at the close of the administration in 1891, and continued for fifteen years, seems not to have been friendly to the widow, Mrs. Barrell, because he never paid to her any rents and never agreed to do so. Neither did she even demand of Mr. Kumpf the possession of the property, or that he account to her for rents collected.

Whatever may have inspired Mr. Kumpf to take possession and collect rents, there is nothing to indicate that he was an agent or tenant of the widow. That fact is evidenced by the letter of Mrs. Barrell bearing date of August 14, 1907, in which she says she gave up the property because of the unfriendly attitude of Mr. Griffin's "folks."

It is, however, contended by appellant that as the widow had remarried in 1891 when Mr. Kumpf entered into possession she was under the disability of coverture, and could not be barred by the ten-year Statute of Limitation applicable to actions to recover dower. This issue calls for a most careful consideration of the statute fixing the date within which actions for the recovery of dower may be instituted. [Sec. 391, R. S. 1909.] This statute seems to have received a desultory consideration in the cases of Harrison v. McRey-

nolds, 183 Mo. 533, 1. c. 539; Kennedy v. Duncan, 224 Mo. 661, and Jodd v. Railroad, 259 Mo. 239. However, these cases are at most only a partial construction of said statute.

Section 391, Revised Statutes 1909, was first enacted in the year 1887, under the title of "An Act limiting the time for the institution of suits for dower in real estate," and, as first enacted, read as follows:

"Section 1. All actions for the recovery of dower in real estate, which shall not be commenced within ten years from *and after this act takes effect, or within ten years after* the death of the husband, through or under whom such dower is claimed or demanded, shall be forever barred: *provided, however, that if any person entitled to bring an action for the recovery of dower at the time this act takes effect be under legal disability to bring such action, such person may bring such action after the time herein limited and within three years after such disability is removed: provided, further, that the limitation in this act specified shall not be deemed to apply in any case where the widow is in possession of, and enjoying the mansion house of her husband as specified in section 2205, Revised Statutes of the State of Missouri of 1879, until she shall have been evicted therefrom."* [Laws 1887, p. 177.]

At the revising session of 1889 the foregoing section was amended by a revised bill, and all those provisions quoted in italics were eliminated, leaving the section in the form which it has ever since appeared in our statutes. [Sec. 4558, R. S. 1889; Sec. 2979, R. S. 1899; and Sec. 391, R. S. 1909.]

There seems to be no doubt that it was the legislative intent to repeal those provisions of the original act suspending its operation in favor of parties under legal disabilities, and possibly as to widows occupying the mansion houses of their husbands.

So much of the original act as appears in the revised bill was taken from the Act of 1887. This is

manifest by a reference in the revised bill itself to the Laws of 1887, p. 177, as the place from which this section as amended was derived.

The usual rule is that when part of a former act is repeated in an amendatory statute, the provisions thus repeated are considered as a continuation of the former law, and not as a new enactment; while those parts of the original act which are omitted from the amendment are treated as repealed. This rule is announced by Lewis-Sutherland in the second edition of his work on Statutory Construction, vol. 1, pp. 442-3, as follows:

"The amendment operates to repeal all of the section amended not embraced in the amended form. The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts or the changed portions are not to be taken to have been the law at any time prior to the passage of the amended act."

See also 36 Cyc. 1082. This rule seems to have met with statutory recognition in this State. [Sec. 6606, R. S. 1889; Sec. 8086, R. S. 1909. See also State ex rel. Craig v. Woodson, 128 Mo. 497, l. c. 512.]

However, whether the limitation on suits to recover dower be considered as a continuation of part of the Act of 1887 or a new enactment in the revised bill of 1889, we find that the plaintiff cannot successfully assert the coverture of Mrs. Barrell as a defense to her failure to bring suit for her dower, for two reasons:

(1) The dower Statute of Limitation is not a part of the general law applicable to the limitations of real actions (Art. 8, chap. 21, R. S. 1909), and, therefore, cannot be construed *in pari materia* with such general law.

The rule is that when a Statute of Limitation stands alone and makes no exceptions as to its pro-

visions none will be read into it.  In harmony with this view it was ruled by this court that the disabilities enumerated in the general law cannot be interposed to toll or modify the thirty-year Statute of Limitation. [DeHatre v. Edmonds, 200 Mo. 246, l. c. 279; see also M'Iver v. Ragan, 15 U. S. 25, l. c. 29.]

Statutes of Limitation are looked upon with favor, because they tend to promote public peace and to prevent the litigation of stale and abandoned claims. · Tyler in his work on Ejectment, p. 928, gives the rule for construing this class of statutes in the following language:

"Another well-settled proposition in respect to the running of the Statute of Limitations is, that the statute will run against all persons, and no exception to the statute can be claimed, unless it is expressly mentioned in such statute. 'General words of a statute, it is considered, must receive a general construction; and, unless there can be found in the statute itself some ground for restraining it, it cannot be restrained ·by arbitrary addition or retrenchment.' [Citing authorities.] And the doctrine of the authorities very clearly is, that Statutes of Limitation are to be strictly construed; and where the statute makes no exception, the court can make none on the ground of any inherent equity, or because it may appear to be reasonable that the statute should not run against any party in a given case."

(2)  Having first enacted the statute limiting the time for instituting suits to recover dower with a saving clause or exception in favor of persons who were or might be under legal disability to sue, and subsequently having eliminated that saving clause in the revised bill (as before quoted), the legislative design to repeal such disability clause is clearly demonstrated. The fact that disability to bring an action to recover dower was more likely to result from coverture (a re-

marriage of the widow) than anything else may have been one of the reasons which moved the General Assembly to enact a new law in 1889 permitting a married woman to maintain her suits as a *feme sole*. [Sec. 1996, R. S. 1889.] It is certain that the statute last named is in harmony with the dower Statute of Limitation as amended at the same session of the General Assembly so far as the disability of coverture is concerned.

We are not unmindful of the fact that the conclusion we have reached is out of harmony with those prior decisions of this court which held that limitation would not run against dower prior to the assignment thereof. [Johns v. Fenton, 88 Mo. 64; Holmes v. Kring, 93 Mo. 452.] However, the provisions of the special Statute of Limitation relating to dower enacted in 1887 (if then in force) was not considered by the court when the case last cited was decided.

The right to dower does not attach to any particular part of a tract of land until it is assigned. It is in a sense an encumbrance upon all the land to which the husband died seized. The Legislature may have deemed it for the public good that land should not be rendered unsalable by such an outstanding claim for an indefinite time, and therefore wished to compel parties having such undivided possessory rights to assert them within ten years. At any event, it is our duty to obey and enforce all valid laws as they are written, and not as we think they ought to have been written. [State ex rel. Gray v. Wilder, 206 Mo. 541, l. c. 549.]

It seems to be contended by appellant that the dower Statute of Limitation cannot apply to the title which it purchased from Mrs. Barrell, because her husband was dead before the year 1887 when this law was enacted. We do not think this point presents any difficulty. The chief purpose of the statute was to compel widows to institute suits to have their dowers assigned within ten years. As the statute operated

prospectively it at least became the duty of the widow to bring her action within ten years after Mr. Kumpf entered into possession in 1891. We do not wish to be understood as holding that it was not the duty of the widow to bring her action within ten years after the date of her husband's death in 1885, for it is undoubtedly within the power of the General Assembly to shorten a Statute of Limitation, provided a reasonable time is left within which parties affected by its provisions may institute their actions. [Tice v. Fleming, 173 Mo. 49; Winkleman v. Levee District, 171 Mo. App. 49, 1. c. 58.]

III. Appellant contends that if the possession of Kumpf was on behalf of the heirs of Thomas Griffin, deceased, then it was at no time adverse to the widow, because the heirs of Griffin and his widow were tenants in common. In Robinson v. Ware, 94 Mo. 1. c. 687, there is a quotation from Kent which tends to support the theory that a widow possessed of an unassigned dower right is a tenant in common with the heirs of her deceased husband. That quotation seems to be directly in conflict with the prior announcement of this court in the case of McClanahan v. Porter, 10 Mo. 746, 1. c. 751. We think the rule announced in McClanahan v. Porter is correct. The possession of a dowress is not adverse to the heirs. She has only a life-estate, and her possession passes to the heirs as remaindermen at her death. It is not so when the situation is reversed. If the heirs exclusively occupy land to which the widow is entitled to dower and refuse to attorn to her any rents, then their possession becomes adverse to her and she cannot be considered as a tenant in common with them.

*Tenancy in Common.*

IV. The word "recover," as used in section 391, Revised Statutes 1909, does not mean to regain posses-

**Recover.** sion of real estate which has already been assigned or admeasured to the widow as dower. As used in said section it means "to obtain final judgment—to succeed in a lawsuit." [Webster's New International Dictionary.] The same as to "recover" a fine by the State, or to "recover" damages by one who has received personal injuries through the negligence of another. [Gawtry v. Adams, 10 Mo. App. 29, l. c. 33; 34 Cyc. 763-4; Monterey County v. Cushing, 83 Cal. 507, l. c. 512; Keiny v. Ingraham, 66 Barb. (N. Y.) 250, l. c. 257; Inhabitants of Oxford v. Inhabitants of Paris, 33 Maine, 179, l. c. 181.] In the case last cited it was said: "When a defendant has obtained a judgment against a plaintiff in a suit, he in legal language is said to have recovered in that suit."

It will be observed that section 391, Revised Statutes 1909, does not make adverse possession a necessary incident to the duty of the widow to bring her action to recover dower within ten years after the death of her husband. It seems to be her unconditional duty to bring the action within ten years if she intends to bring it at all.

The fact that in the statute as originally enacted there were saving clauses in favor of the widow if she was in possession of the mansion house or under legal disability, and that these several clauses were stricken out in the revision of 1889, strongly indicates a legislative purpose that there should be no exception at all to the operation of this statute.

Whether it would be within the constitutional power of the General Assembly to penalize a widow by barring her dower because she fails to bring suit for her dower in land which is already in her exclusive possession, and whether or not the heirs might be estopped from setting up the Statute of Limitation after they have acquisced in the exclusive possession of the widow, are matters not before us on the record in

this cause, and upon which we express no opinion at this time.

We do hold on the facts in this case that, being out of possession and with knowledge on her part that at least some of the collateral heirs were disputing her right to the property (as she admits in her letter to Adams, and in her testimony), it became the duty of Mrs. Barrell to institute her suit to recover her dower in the property in controversy within ten years after the close of the administration in 1891, and having failed to do so both she and the plaintiff as the assignee of her claims are barred.

The conclusion we have reached renders unnecessary a consideration of the alleged equitable defenses pleaded by defendant. The judgment of the trial court is affirmed.

*Faris, P. J.,* and *Walker, J.,* concur.