MARY M. MOORE v. ALPHA HOFFMAN ET AL.; HARRY R. PHILLIPS,
Trustee in Bankruptcy of Estate of ALPHA HOFFMAN, Appellant.
—39 S. W. (2d) 339.

Division One, May 21, 1931.*

*NOTE:  Opinion filed at October Term, 1930, March 31, 1931; motion
for rehearing filed; motion overruled at April Term, May 21,
1931.

*Robb & Robb* for appellant.

*Sam Bond* and *Spradling & Dalton* for respondent.

STURGIS, C.—This is a suit to determine title under the statute and for partition of 262 acres of land in Perry County, Missouri. The petition is in two counts and sets up both legal and equitable titles, a resulting trust, adverse possession under claim of owner-

ship for more than ten years, and estoppel against any claim of ownership by defendant Alpha Hoffman and her trustee in bankruptcy, who is the real defendant. Certain other parties, the Federal Land Bank and the Bank of Perryville, which hold deeds of trust against the land, are parties defendant, but their respective interests in the land are not controverted.

It is conceded that defendant Alpha Hoffman, who is a daughter of the plaintiff, is an adjudged bankrupt whose estate is in charge of defendant Harry R. Phillips, and that he as such trustee and for the benefit of creditors has a right to set up and claim as against her mother whatever interest Alpha Hoffman has under the law in and to this land, regardless of her wishes in the matter. This is said because Alpha Hoffman in her schedule of property in bankruptcy disclaimed having any interest in this land, and such is her personal attitude in the trial of this case. In a way, her trustee in bankruptcy is trying to force on her, and properly so for the benefit of her creditors, an interest in this land which she personally repudiates. By his answer the trustee claims that Alpha Hoffman owns a three-fourths interest in this land by inheritance from her deceased father, Hilary Moore, and from a deceased sister. The answer concedes a one-fourth interest in plaintiff derived from this same daughter of plaintiff and sister of defendant Alpha Hoffman. The plaintiff claimed, and the trial court awarded her an additional interest, making one-half in all, by reason of her election to take a child's part of the real estate of her husband, Hilary Moore—an election made on the eve of this trial and brought into the case by amendment of the petition. The trial court also awarded to the plaintiff a lien, claimed in her petition, on the land, or its proceeds if sold in partition, for $1200 and interest "paid by plaintiff after the death of her husband for the protection and preservation of her rights and those of the heirs in the property," and for $7500 for permanent improvements placed on the land by plaintiff in good faith and under the belief that she alone owned the land. The interests of the mortgagees, Federal Land Bank and Bank of Perryville, were also preserved and the land ordered partitioned. The defendant trustee alone has appealed, though plaintiff complains here of a number of errors against her. No serious error is complained of as to the pleadings and same need not be further discussed, though some phases thereof will be adverted to further along.

Hilary Moore, who died in 1890, husband of this plaintiff and father of defendant Alpha Hoffman, may be regarded as the common source of title, though plaintiff claims a resulting trust or at least a preferential lien on the land for having paid from her own funds a large part of the purchase money by which he acquired title to the land in question from his brothers and sisters along in 1882

to 1885. The money so furnished by her forms the basis of the trial court's allowance of the lien for $1200.

In the picture of pioneer life here presented, Hilary Moore, the husband and father, soon passed away, leaving plaintiff, then a middle aged woman, and two daughters, Alpha, the nominal defendant here, and Ida. The tract of land in question had belonged to the father of Hilary Moore, who died in 1880, leaving eight children. When the scene opens, we find Hilary Moore living on a tract of 132 acres of land, the source of the title to which is not shown, either adjoining or close to the 262-acre tract in question. He then buys up the interests of his brothers and sisters in the 262-acre tract in question and pays or contracts to pay them $100 each, making $700 in all. This money he borrowed from his wife's (plaintiff's) sister. Hilary Moore soon becomes unable to work, and dies, leaving this purchase money unpaid. He had sold and spent practically all his personal effects and left little with which to carry on the farm. He also owed other debts, to which was added the funeral expenses. The tract of 132 acres on which he lived was only partly in cultivation. The tract of 262 acres in question was swamp land, subject to overflow from the river and a small creek passing by and through it, and covered with heavy timber, but, when the water was controlled, proved to be rich and productive land. Only a few acres of this land, twenty to thirty perhaps, was then in cultivation.

This plaintiff is shown to have been a typical, resolute, pioneer woman, industrious and with considerable ability. She never remarried and at the time of this trial was seventy-eight years old. No administration was had on the estate of her husband, Hilary Moore. The widow, this plaintiff, took charge of his property without question from anybody. She rented out the land and paid all her husband's debts, including the purchase price of this land. Her own father died about this time, and she got $500 from his estate, and with that and her savings paid the $700 yet due on the purchase price of this land. The evidence shows that this land was worth little more than the amount thus paid by the widow. The personal property left by the deceased was probably worth less than the widow's absolute allowances and this accounts for there being no administration. That under the law the widow was entitled to dower in this land, is conceded. Whether her homestead rights would cover any part of the tract in question seems doubtful, but the evidence shows that the tract now in question was farmed and used in connection with the other tract, on which was the dwelling house, as one farm, and under the law the widow's quarantine right of occupation and use would cover this tract until such time as dower and homestead were assigned or extinguished. [Gentry v. Gentry, 122

Mo. 202; Grogan v. Grogan, 177 S. W. 649; Betts v. Gehrig, 306 Mo. 36, 41.]

There can be no doubt that whatever was the legal rights of the widow and her two children in the deceased's property, real and personal, the widow believed that when she had thus paid all it was worth to preserve it, it was hers absolutely, and that her children then and later fully acquiesced in this view of the matter. She testified that she thought the deeds had been so made that the land was hers and did not know differently till this controversy arose. Under this view of her rights, the widow, this plaintiff, took full and complete charge of this land, rented it out and collected the rents, paid the taxes and for improvements without accounting to anyone, treated it as her own, and exercised full dominion over it for thirty-seven years, when this suit was brought to assert the inherited rights of the daughter Alpha Hoffman. Some three years after Hilary Moore died, the daughter Ida died without issue and the mother inherited from her one-half of her one-half in fee—this on the theory that the mother took only a life estate of dower and homestead plus her quarantine right and that the two children took the remainder in fee. There was no question but that the mother, this plaintiff, continued to use, occupy and treat the land as her own. With admirable energy and ability, she not only paid her husband's debts and discharged the liens against the land, but improved the same by clearing it of timber, changing and confining the channel of the creek, building levees and ditches so as to drain it, and otherwise putting it in a good state of cultivation. She also built a good dwelling, barn and other out-buildings about 1900, with the result that this land, which was hardly worth ten dollars per acre in 1890, was worth some $200 per acre at the time of this trial. It appears also that during all these years since her husband's death this plaintiff has lived on and received the rent and proceeds of the other tract of 132 acres, which is not in controversy here nor anywhere else so far as this record shows, but whether plaintiff has the same or a different title to that tract is not disclosed. Some three years after plaintiff's husband died, her daughter, the defendant Alpha, married John Hoffman and she with her husband continued to live with plaintiff on the 132-acre tract. John Hoffman farmed parts of the land, generally at least as a renter, and proved to be more of a liability than an asset. In due time he added nine children to the household and caused his mother-in-law to have to pay a number of security debts for him. It was shown that while he did considerable work in building the dwelling house on the land in question, the expenses of the material and carpenter work were borne by the plaintiff. At no time did he occupy or use any of the land by virtue of his wife's ownership, nor did he or she ever make

any such claim. John Hoffman with his wife, the defendant, lived on the tract in question in 1913, 1914 and 1915, but he was a mere renter, and when the plaintiff became dissatisfied with his farming operations, failure to account for the rent, and for other reasons, she caused him to leave this land and rented it to another tenant, and soon thereafter he took up his residence elsewhere than with her or on her land.

At the time this suit was commenced defendant Alpha Hoffman had been adjudged a bankrupt and defendant Harry R. Phillips had been duly appointed and qualified as her trustee in bankruptcy.  We agree that such adjudication of bankruptcy vested in the trustee so appointed title to all the property of Alpha Hoffman not exempt and that the trustee alone could maintain suits involving such property. This included real estate and the title to all the real estate held by the bankrupt at the time of the adjudication in bankruptcy vested in the trustee. As said in Lumber Co. v. Harvester Co., 215 Mo. l. c. 236, 237: " 'On adjudication, title to the bankrupt's property became vested in the trustee, . . . with actual or constructive possession, and placed in the custody of the bankruptcy court.' 'The adjudication operates as a seizure of the property of the bankrupt, by which it is taken *in custodia legis.'* . . . That property in the legal custody of a court of competent jurisdiction is not subject to seizure by judicial process from another court, is the settled law of this court, and the court in which jurisdiction first attaches must prevail." But in the present case Alpha Hoffman made no claim to any title or interest in this real estate at the time of her adjudication of bankruptcy and her schedule of property owned omits this real estate, not through oversight, but by design. It also appears that she had and claimed no possession or right of possession of this land and that the possession and control of this real estate was fully and wholly in this plaintiff. Under such facts, we must deny defendant trustee's claim that the bankruptcy court, and not the State court, had jurisdiction to determine the controversy here presented or any phase of the same. This suit does not challenge or interfere with the jurisdiction and power of the court of bankruptcy to administer the bankrupt's property. The question presented is whether or not, and to what extent, if at all, this real estate is property of the bankrupt. Questions of that character are within the jurisdiction of the proper state courts. No attempt was made, if it could have been, to remove this case to the Federal court, and such court in no way tried to interfere with the procedure in the State court.

In Peters v. Bowers (Colo.), 158 Pac. 1101, a similar question was presented and that court ruled:

"Bowers (plaintiff) brought her suit in the State court, and the only question in the case here is whether she was obliged to try her claim in the Federal District Court, or whether under the circumstances the State court had jurisdiction to try the case. In the absence of a Federal statute providing otherwise, the title to real property claimed in good faith by a third party usually is determined by the local laws as evidenced by the decisions of the State courts, and not summarily by the bankruptcy court. Ordinarily, without a Federal statute to the contrary, Bowers (plaintiff) had a right to have her claim tried by a suit in the State court." After quoting from and considering the Bankruptcy Act, the court further said: "Bowers lost no right solely by the voluntary bankruptcy of Peters, and the Bankruptcy Act takes from her no right she naturally had to have her claim tried in the State court. If she is to be deprived of such right, it must be for lawful reasons other than the bankruptcy of Peters, and those found in the bankruptcy statute. [Bardes v. Hawarden Bank, 178 U. S. 524, 44 L. Ed. 1175; Frank v. Vollkommer, 205 U. S. 521, 51 L. Ed. 911.]"

In Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. 985, where plaintiff was seeking to establish a lien on certain property and the proceeds thereof claimed by the bankrupt and his trustee, the court said: "We think it was the intention of the Bankrupt Act to allow adverse claimants to property or parties claiming liens to establish their rights by suits in courts of plenary jurisdiction and not to subject such claims to summary disposition in the bankrupt court, unless it may be when the claims are frivolous or made in bad faith." The court then quoted with approval from Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403, to-wit: "The debtor of a bankrupt, or *the man who contests the right to real or personal property with him,* loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions." [Bardes v. Hawarden Bank, 178 U. S. 524, 44 L. Ed. 1175.] The court further added: "'Of course, we do not mean to assert that under the judgment of the State court the fund or property could be taken from the possession of the bankruptcy court; the contrary is the law." And we may say that the trustee in bankruptcy was properly made a party defendant in this case and permitted to defend the same. We must, therefore, rule this point for the plaintiff.

As we have said, the plaintiff at the time of beginning this suit, acting on legal advise doubtless, caused letters of administration to be issued on the estate of Hilary Moore thirty-seven years after  his death, and then in due and proper form filed her election to take a child's part of her husband's real estate in lieu of dower as provided by Sec-

tions 324 and 325, Revised Statutes 1919. On plaintiff's theory, this related back to the time of the husband's death in 1890 and gave the plaintiff as widow one-third of this land and to her two daughters one-third each. Then on the death of one daughter a few years later her interest was increased to one-half and that of the defendant to one-half. Plaintiff bases her right of election at this late date on the theory that by statute she had until six months (formerly a year) after the grant of letters of administration to make and file her election, and as she had been in full possession of all the land since her husband's death and no administration had been had, her right of election was not barred or lost. The trial court took this view, of the case, which finds some support in McFarland v. McFarland, 278 Mo. 1, 211 S. W. 23, and in the suggestion made in Investment Co. v. Curry, 264 Mo. 483, 500, and also in the view that statutes of limitation do not affect the right but simply destroy the remedies for the assertion of the right in court; that such statutes are always a shield but not a sword. [Boyce v. Railroad, 168 Mo. 583, 598; Smith Bros. Land & Inv. Co. v. Phillips, 289 Mo. 595, 597; Leete v. State Bank, 115 Mo. 184, 204.]

The defendant insists that under the express provisions of Section 359, Revised Statutes 1919, all actions for the recovery of dower in real estate are barred after ten years from the death of the husband under whom such dower is claimed, regardless of the widow's continued possession of such lands. We will concede that the settled law in this State, under the wording of this statute, is that the widow's right to dower becomes extinct unless an appropriate proceeding for the recovery and admeasurement thereof is commenced within ten years after the husband's death. The fact that the widow may peaceably remain in possession of her husband's land under her right of quarantine or otherwise and continues to occupy the same, is no excuse for her not having dower assigned and does not toll the statute. It is not necessary that she be deforced of her dower or deprived of the possession of her husband's land to set in motion the ten-year Statute of Limitation relating to dower. [Cave v. Wells, 319 Mo. 930, 942, 5 S. W. (2d) 636; Belfast Inv. Co. v. Curry, 264 Mo. 483, 496, 175 S. W. 201; Falvey v. Hicks, 315 Mo. 442, 459, 286 S. W. 385; Jodd v. Railroad, 259 Mo. 239, 168 S. W. 611; Edmonds v. Scharff, 279 Mo. 78, 213 S. W. 823.]

And as the widow's right to take a child's share in her husband's real estate is in lieu of dower, such right of election must be exercised while her right to dower exists, and when her right to dower is extinguished by her failure to have same assigned within the statutory period, her right of election to take a child's part expires with it. [Cave v. Wells,

supra; Payne v. Payne, 119 Mo. 174, 179; Von Arb v. Thomas, 163 Mo. 33, 42.]

And as the widow's right of quarantine given her by Section 334, Revised Statutes 1919, is an incident of dower and exists only until dower be assigned, it also follows that when the right to have dower assigned expires by limitation and is lost to her, her right of quarantine is also lost. [Smith Bros. Land & Inv. Co. v. Phillips, 289 Mo. 579, 594, 233 S. W. 413; Falvey v. Hicks, 315 Mo. 442, 461.] It follows, therefore, that the trial court erred in holding that the right of the widow to elect to take a child's part was properly exercised by her at this late time and that she thereby obtained an additional interest in her husband's real estate.

It follows that in the year 1900, ten years after the husband's death and thereafter, the widow, this plaintiff, was in full possession of this land, claiming entire ownership, but in reality having the legal title to only a one-fourth interest. Up to that time she had been rightfully in possession under her dower and quarantine rights and her possession was not adverse to the rights of the heirs. [Investment Co. v. Curry, 264 Mo. 483, 499; Falvey v. Hicks, 315 Mo. 442, 458, and cases cited.] But from that time on the plaintiff and defendant Alpha Hoffman were at most tenants in common of this land. Leaving aside plaintiff's equities, the defendant was entitled to joint possession of the land with plaintiff and to three-fourths of the income and was obliged to pay a like proportion of the taxes and necessary upkeep of the farm. If plaintiff excluded defendant from the joint possession and control of the land and appropriated the entire income to herself under claim of full ownership and right to do so, then her possession was adverse and set in motion the ten-year Statute of Limitation. It is held in Saucier v. Kremer, 297 Mo. 461, 473: "It is not necessary that actual notice of an adverse holding and disseizin be brought home to co-tenants. Such notice may be constructive and will be presumed to have been brought home to them when the adverse occupancy and claim of title is so open, notorious, exclusive and inconsistent with the existence of any title in others, except the occupant, that the law will raise the inference of notice to co-tenants, if any there be out of possession." And again on page 475: "It is also suggested that, . . . the plaintiffs and defendant claim through a common source of title and defendant cannot therefore set up title to the whole property by adverse possession. We cannot agree to this contention. It is allowable for a defendant, although she may claim record title under a common source, to also plead and prove title by adverse possession to the whole of the property. [Waddell v. Chapman, 292 Mo. 666.]" See also Boyce v. Railroad, 168 Mo. 583. This is no new doctrine

and it finds support in cases too numerous to mention. Of course it requires stronger evidence to establish adverse possession as against a tenant in common than as against a stranger to the title.

The defendant in his argument concedes that "Mrs. Moore (plaintiff) had the benfit of the use of this place for over thirty-seven years," and the trial court recites in the judgment "that plaintiff, Mary M., Moore, has since the date of the death of her husband been in the open, exclusive, notorious, and adverse possession of said real estate and in good faith believed that she was the sole owner of the said real estate, and had expended large sums of money in the improvement of said real estate, etc., . . . the improvements having been made in good faith and with an honest purpose of improving said property. . . . The court further finds that Alpha Hoffman has never at any time interfered with the open, exclusive and notorious possession and management and control of said property by Mary M. Moore, or with her right to the entire income from said property since the death of Hilary Moore." If this finding is supported by the evidence, and we think it is, such finding may not support the ruling that thereby plaintiff's right of election to take a child's part was preserved to her, but it does support and establish plaintiff's claim of full title by adverse possession, and the court should have given judgment accordingly. The plaintiff got less than she was entitled to. The law is well settled in this State that adverse possession of land for the required time and of the requisite character not only bars any and every action brought to recover such land or an interest therein, but extinguishes the claimant's title and confers on the party in possession a full title in fee, as much so as a warranty deed from the true owner. "Adverse possession not only bars an action, but confers an independent title." [Waddell v. Chapman, 292 Mo. 666, 676; Kirton v. Bull, 168 Mo. 622, 633; Stevens v. Martin, 168 Mo. 407, 410; Scannell v. American Soda Fountain Co., 161 Mo. 606; Cunningham v. Snow, 82 Mo. 587, 592; Allen v. Mansfield, 82 Mo. 688, 693; Fugate v. Pierce, 49 Mo. 441; Nelson v. Brodhack, 44 Mo. 596; Hamilton v. Boggess, 63 Mo. 233.]

The acts and conduct of the daughter Alpha Hoffman, who was not called as a witness by either side, may be taken as evincing a parol gift or relinquishment of her legal title and interest in this land to her mother, this plaintiff, and if thereafter plaintiff "continued in the open, exclusive, notorious and uninterrupted possession of the premises, continuously paying the taxes, cultivating, improving and leasing the lands, and exercising all the usual acts of ownership on and over it" for a period of ten years, and for the same period of time the defendant Alpha Hoffman "exercised no control over it, had nothing whatever to do with it, and never set up any claim to it," then this case is within the facts in

the case of Kirton v. Bull, 168 Mo. 622, and as there said, such "adverse possession not only bars action, but confers title." It is also said in Allen v. Mansfield, 82 Mo. 688, 693: "The ten years' consecutive adverse possession, under claim of title, gives the title to the occupant as effectually as any written conveyance. It takes away the title of the real owner and transfers it to the occupant. 'The party who acquires a title to land under the statute by possession adverse to the true owner, acquires all the title of the true owner precisely as if he had a deed from him.'" The trial court found, as stated, that plaintiff had held adverse possession of this land for twenty-seven years prior to bringing this suit. All that is necessary to confer title is to find that such adverse possession covered a consecutive period of ten years, and such period need not be the ten years next preceding the bringing of the suit to try the title. [Allen v. Cunningham, 82 Mo. 688.]

Giving particular attention to the last ten years prior to the commencement of this suit, we find that the land in question was rented to and cultivated by two tenants of plaintiff, Dace Gouzzin and Frank Manche, the last named being the tenant at the time of the trial and his tenancy covering the last seven years. The other tenant took over the land when plaintiff, becoming dissatisfied with defendant's husband, John Hoffman, as her tenant, had him vacate at the close of the year 1915. He and his wife, defendant, then lived with the mother, plaintiff, a short time, moved to another farm, and then located in Perryville, Missouri. It is not questioned but that these two tenants respectively rented the land from plaintiff and were her tenants only, paid her the rent, and took directions from her as the sole owner of the land. They knew no other landlord. Their possession was her possession in every way. Mrs. Hoffman had nothing to do with the land or with them as tenants and made no claim of interest in the land. It is also unquestioned that plaintiff paid the taxes during all these years. She kept the buildings insured in her own name as sole owner.

The point is made that when plaintiff borrowed money on this land in 1917 from the Land Bank and again in 1922 when she borrowed from the Bank of Perryville, and in procuring a loan at an earlier date, her daughter, defendant, and husband signed the deeds of trust. The evidence is clear, however, that it was plaintiff who procured these loans and for her own benefit and in which defendant had no share or say so. The borrowed money was paid to plaintiff. She says she never asked the defendant to sign the loan papers and never stated that the defendant had an interest in the land; that the parties making the loans requested or required this and that defendant signed willingly and without discussion. When it is remembered that the record

title was in Hilary Moore and no convyance was of record from defendant, his daughter, we can readily see why the party making the loan had this done. We do not, however, regard this evidence as controlling or even of great weight in determining whether defendant either had or claimed an interest in this land. The same is true of the fact that when some years ago a railroad, in condemning for a right-of-way over this land, joined Hoffmans as parties defendant. It was shown that the damages awarded went wholly to the plaintiff. The same is true in bringing a damage suit against the same railroad for injury to the crops and land, that defendant was joined with plaintiff as a party plaintiff therein. These damages also went solely to plaintiff. It was also shown that at a meeting of landowners called to vote on a proposition connected with a drainage district, the defendant as well as plaintiff voted when only landowners were qualified to vote. It was shown that considerable feeling was worked up at this meeting and plaintiff said that her daughter did not intend to vote but that other non-landowners were allowed to vote, and her daughter was prevailed on to do so without plaintiff's approval or representation. The trial court heard all the evidence and made his finding as to plaintiff's adverse possession, and we do not disagree with him.

Under this finding as to adverse possession of plaintiff and the legal effect of same on the title to the land, the trial court should have found that plaintiff was the sole owner of this land and that defendant Alpha Hoffman and her trustee in bankruptcy had no right, title or interest therein. This would have rendered unnecessary any finding as to plaintiff having a lien on the land for, or a right to be reimbursed for, the money paid out on the purchase price of the land or for improvements made in good faith under the belief that she was the sole owner; and no partition could or should have been awarded under the second count. All this, however, is in defendant's favor, or at least harmless, and defendant trustee cannot complain. No appeal was taken by plaintiff and the judgment must stand as to her. It is unnecessary, therefore, for us to determine whether the plaintiff was rightfully entitled to a lien and to be reimbursed for her expenditures in preserving and improving this land, since defendant is not harmed thereby. We are not, however, to be taken as criticising the court's ruling in that respect. [Armor v. Frey, 253 Mo. 447, 477; Grogan v. Grogan, 177 S. W. 649.] Other matters are discussed in the briefs, but are not necessary to be considered.

As there is no error of which appellant can complain, the judgment should be and is affirmed. *Seddon* and *Ferguson, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.