ERNEST CAVE, Appellant, v. MELISSA WELLS.—5 S. W. (2d) 636.

Division One, April 11, 1928.

*Page & Barrett* and *G. Purd Hays* for appellant.

SEDDON, C.—This is a suit in which plaintiff (appellant) seeks the admeasurement and assignment of dower to defendant (respondent) in the west one-half of the northwest quarter of the northeast quarter of Section 5, Township 27, Range 20, in Christian County, Missouri, and that plaintiff be decreed to be the owner of the fee-simple title in said described land, subject to defendant's dower therein as so admeasured and assigned. Plaintiff is the grandson of defendant, and is the son and sole heir of Tennessee L. McDonald (referred to in the record herein as Tenny L. McDonald), a deceased daughter of defendant by a former marriage of defendant and William McDonald, who is the common source of title. William McDonald died intestate in the year 1886, and was survived by his widow, the defendant herein, and by one child and heir, Tennessee (Tenny) L. McDonald, the mother of plaintiff. At the time of his death, said William McDonald was the owner of forty acres, more or less, of land in Christian County, including the twenty (or, possibly, twenty-three) acres above described and now in controversy, and twenty acres adjoining the above-described land on the south and southeast, and described as the north one-half of the southwest quarter of the northeast quarter of Section 5, Township 27, Range 20, in Christian County. Tennessee L. McDonald, at the time of the death of her

934

father, William McDonald, was about six or seven years of age. Within a year or two after the death of William McDonald, his widow, the defendant herein, married L. D. Wells, who is her present husband, and the daughter, Tennessee (Tenny) L. McDonald, was reared by her mother and step-father, Mr. and Mrs. Wells, and resided with them until she married. About 1898 or 1899, when Tennessee L. McDonald was nineteen years of age, she married Louis N. Cave. Tennessee (Tenny) L. Cave (*nee* McDonald) died intestate on March 18, 1908, and was survived by her husband, Louis N. Cave, and one child and heir, the plaintiff herein, Ernest Cave. So far as the record herein discloses, no administration was had upon the estate of William McDonald, or upon the estate of his daughter, Tennessee L. Cave.

The answer of defendant pleads, as an equitable defense to the petition, that "at the time of the death of the said William McDonald, he was seized and possessed of forty acres of real estate in Christian County, Missouri; that the real estate described in plaintiff's petition was one-half of the said land, and that the remainder of said forty acres lay south and southeast of said twenty (acres), joining the same, and was described as follows: the north half of the southwest quarter of the northeast quarter of Section 5, Township 27, Range 20; that the dwelling house of the said William McDonald was situated on the land last above described; that this defendant, his widow, and Tenny McDonald, his daughter, were the sole heirs at law of the said William McDonald; that some years after the death of said William McDonald, to-wit, on or about the year 1898, this defendant and Tenny McDonald, who later married Louis Cave, orally agreed upon a division between them of the real estate of which the said William McDonald was seized at his death; that it was then agreed between them that Tenny McDonald should have the land last above described as her own real estate, free of any claims of this defendant as the widow of William McDonald, whether by dower, or otherwise, and that this defendant should have the real estate described in plaintiff's petition as her own separate real estate, free from any claims of the said Tenny McDonald as an heir of the said William McDonald; that acting upon said agreement and oral division or partition, said Tenny McDonald immediately went into possession of the land last above described and remained in possession thereof until her death in 1908, and that her husband, Louis Cave, is now in possession thereof; that this defendant immediately and at said time went into possession of the real estate described in plaintiff's petition and has been in the undisputed, adverse, peaceable, notorious and uninterrupted possesssion of all of said real estate and claiming to own the same in fee simple from said date until the present time, and is now in possession thereof; that the said Tenny McDonald, during her

lifetime, lived in the vicinity thereof and never made any claims thereto, but fully carried out said oral partnership by keeping and owning and enjoying the land last herein above described; wherefore, defendant says plaintiff is estopped to deny said agreement, and this defendant prays the court that said oral division or partition be by this court confirmed and affirmed, and that this defendant, by reason of the foregoing facts, be adjudged to be the owner in fee simple title of the real estate described in plaintiff's petition, and for such other and further relief as to the court may seem meet and proper.'' The answer also pleads the ten-year and twenty-four-year Statutes of Limitation as a bar to plaintiff's action. The reply denies generally the allegations of the answer.

The record discloses that defendant, Melissa Wells, and L. D. Wells, her husband, as grantors, on December 27, 1901, in consideration of the sum of $250 (so expressed in the deed) paid by T. L. Cave and L. N. Cave, her husband, as grantees, made, acknowledged, executed and delivered a general warranty deed, with express covenants of warranty, conveying to said T. L. Cave and L. N. Cave, her husband, all of the north one-half of the southwest quarter of the northeast quarter of Section 5, Township 27, Range 20 (the same being the twenty acres of land adjoining and lying south and southeast of the land now in controversy), which warranty deed was duly filed for record in Christian County on May 24, 1902. The said deed contains this paragraph or recital: ''We, Melissa Wells and L. D. Wells, give to the said T. L. Cave as an advancement on her interest in our estate, either present or future, the sum two hundred and fifty dollars, it being the intention of the grantors herein to hold all of their estate that in present or future divisions the children of Melissa Wells, nee Melissa McDonald, and the children of L. D. Wells shall have equal shares in case any administration ever be had thereon, or settlement thereof made, and the said amount of two hundred and fifty dollars should be charged to the interest of the said T. L. Cave and her heirs. It is the intention of the grantors herein to deed an absolute 'fee' estate without any limitations whatever to said grantees, T. L. Cave and L. N. Cave, her husband.''

Respecting the alleged oral division or partition, by and between defendant and her daughter, Tennessee (Tenny) L. McDonald, of the forty acres of land owned by William McDonald at time of his death, the witness, L. D. Wells, present husband of defendant, testified: ''I knew William McDonald. He died about thirty-eight years ago—about the year 1886. At the time of his death, he had one child by the name of Tennessee McDonald. At the time of his death she was about six or seven years old. His widow's name was Melissa. I afterwards married her, and she is now my wife. I married her about thirty-six or thirty-seven years ago. This child, Tennessee McDonald,

came to my home from their home and left there when she was married at nineteen years of age. She married Louis Cave. She died March 18, 1908. She left one child, the plaintiff in this case, Ernest Cave. He was the only child living at the time of her death. . . . Q. Just before the girl was married did you hear a conversation between her and your wife about the division of this land? A. They had an agreement as to this land. I was there when this agreement was made. I was willing to this agreement. I was willing for whatever they wanted. I just let them do what they wanted to with it. . . . The girl said she was going to get married and said she would take the twenty with the house on it, and give her ma the other twenty-three acres. This conversation took place there at home a while before she was married. My wife agreed to that proposition made by her daughter. The girl married and moved down there and they lived down there. They moved from my place down there a quarter of a mile on to a part of the McDonald farm, known as the north half of the south part. It was divided east and west and she took that part. It was the part that had the house and barn and spring. My wife took possession of the northwest part, or she already had possession of it for years before she was married to me. Tenny was married twenty-five years ago. This agreement was made about a month or so prior to that time. Tenny took possession as soon as she was married. She might have stayed with us a week or two. My wife remained in possession of the other twenty. Tenny remained in possession of her land as long as she lived. Her husband has been in possession of that land since that time. During that time my wife has never been in possession of that twenty, nor had anything to do with it—only made her a deed. In that deed she and her husband were both named as grantees. I paid the taxes on this land until the deed was made, also on the other twenty that is involved in this suit, for my wife. . . . She has always claimed to own that land involved in this suit. . . . This deed was made to carry out that agreement that had been made to divide this forty acres of land. When the deed was made there was not a word said about a former division of this land. . . . At the time this agreement was made there were no improvements on the north twenty. The twenty they took had two springs, but we had a contract that my stock was to get water out of the upper spring. Tenny lived in the neighborhood all the time till she got sick, then she came up home to be with us so we could take care of her. She knew that her mother claimed to own the other twenty acres. She never expressed any dissatisfaction as to the division of this land, but appeared to be satisfied all the time up to her death." Cross-examination: "The agreement I spoke of was made about twenty-five years ago—about 1898 or 1899. My daughter-in-law (step-daughter?) moved on to this twenty after

she was married. She was married a short time after this contract was made. The contract was between her mother and her. I was there at home when the contract was made. She just said she was going to get married and wanted some land, and I think she said she was going to move down on that place. I agreed for her to move down there. It was alright with us if she wanted to. The twenty acres she moved on was in cultivation. She moved on to the twenty of the south part of the forty. She did not move on to the twenty that is in suit, but on to the other twenty. She stayed there until she died. This was the land that was improved. The twenty that my wife got was not improved. Fifteen acres were in cultivation, but the rest had never been cultivated. In 1901, I and my wife made a deed to Tennessee and her husband. Nothing was said about any prior contract. I don't remember what was said. I made the deed to keep from paying the taxes on it. I had paid the taxes for two years during the time they lived there. The papers say there was an advancement for $250. She and I agreed on that. We wanted some value on the land so we put it at $250. I wanted it high, but Louis didn't. I got no part of the crops, neither did my wife. Louis didn't pay us any rent on the place. The girl never made us a deed to the other twenty. I never asked it, nor thought of such a thing. I thought to make her one to keep from paying the taxes, I was not just giving them something out of the estate and advancing her part of the property—we didn't fix it in the deed that way. We had to have a value so we just valued it at that. The man that wrote the deed said that it would be counted against the estate. I had children and I wanted them to share in with hers. I always treated them all the same. I wanted to treat this boy's mother just the same as my own children and to divide it all equal. I intended to give them each $250 and I gave her this land and one of my children $250 to make it equal. I did that the time the deed was made. This land was not to balance the $250. She just gave them that twenty that they moved on. It was my intention after I died that the value of this land was to be counted out of what this daughter would get. I aimed to treat them all alike. It was not understood that this would be counted out of my and my wife's estate in case of death. I just aimed to treat them all alike. I did not claim this land up until the time this suit was filed."

Witness, Mrs. C. K. Bostick, testified: "Mrs. Wells (defendant) is my sister-in-law. I live in the neighborhood of their home. I knew her daughter, Tenny. I have known her for thirty-three years. I have known Tenny from the time she was twelve years old till she died. I lived in their neighborhood when she was married. I was up at the Wells home shortly before the marriage. I heard Mrs. Wells say something about a division. Soon after that I had a talk with Tenny Cave, after she was married, at her home. . . . She

told me that she and her mother had divided the place, and her mother had given her that place and took the other twenty up there by her pa's place. She told me that they had agreed to this before she got married. She said her mother gave her the home because it had all the improvements on it. She said her mother had taken the north twenty. I never saw anyone happier over a home than Tenny was. She spoke about it several times to me and always called it her home and her mother's twenty. . . . She always called the other twenty 'Ma's,' meaning Mrs. Wells (defendant) here. I had a conversation with her grandma about it. I think that was after the deed was made. . . . She said Mrs. Wells oughtn't to have taken that—she should just have taken one-third of it. And Tenny said that 'grandma ought to be satisfied, that Ma gave me the home place.' . . . Mrs. Wells and her husband have been in possession of this twenty acres involved in this suit since Tenny married, and Tenny Cave and her husband have been in possession of the other twenty. Tenny and her husband were never in possession of the north twenty that I know of.''

Mrs. Lizzie Smith testified: ''I am a half-sister of Tenny Cave and I am thirty-six years of age. As a girl I stayed with Tenny Cave a great deal. We grew up together and I slept with her until she was married. She was married when I was about eleven years old. Q. Do you know anything about an agreement between her and her mother? A. No, sir; I was small then and didn't hear anything about it, but she talked about it. I was over there quite a bit and we would talk things over. She said that when she was going to get married they asked her where she was going to live, and she said down on my twenty acres, and Ma got the north twenty and she got the other twenty. She never did say anything but that the other twenty acres on the north side was her mother's. I don't remember whether they made the agreement before or after they were married. When she got sick we moved in there to take care of the stuff, and she went up to Ma's to stay, so they could take care of her, and she said that was hers and the other was Ma's. She died in March, 1908. We were on the place at that time and she was with mamma. She went over in November before she died in March. Mamma remained in possession of this north twenty until Tenny died. I always understood that it was hers. My sister, prior to her death, knew that my mother was claiming to own that twenty. She was always satisfied and thought things were all right.''

Grover Smith, husband of Mrs. Lizzie Smith, testified: ''I knew Tenny Cave. I knew her about three or four years before she died. Q. Prior to her death did you ever have any conversation with her relative to the division of this forty acres of land? A. We were

living there on her place. We had come up there one day and she was sitting out on the porch and we talked about the spring. We said it would be nice to keep cream in there, and she said, yes, when they divided up things, she got the spring and that the twenty on the north side was her Ma's, and it was hers on the south side. I never heard her speak about this twenty any other time, or say whose it was.''

William Wells testified: ''I am a son of L. D. Wells and am forty years of age. I was raised with Tenny Cave. I was fifteen or twenty years old when she married. I did not hear any agreement or terms about the division of property between her and her mother. I guess I was out. After that she talked about her piece of land and Ma's. I mean by her mother's the north twenty—the land in this suit. They had the other twenty in their possession. She lived there and claimed it as hers. She said they had had an agreement or division, and one was to take the south twenty and the other the north twenty. I heard her mention it once or twice, I guess. My step-mother was in possession of this twenty involved in suit from the time my sister married, and claimed to own it all that time. My sister knew that my mother claimed it, and she never made any objection. My sister claimed to own the other twenty acres. After Mrs. Cave died there was a fence put between the north and south twenties. The other fence had not been on the line. . . . There was a gulley washed out about ten years ago and we did not need the spring, and Louis Cave changed the fence and put it on the line. This conversation about the ownership of this land was after my father and step-mother had made a deed to it. . . . She said at the time they had divided the land her mother got the north twenty. I had heard of it before. I never heard them make the contract dividing it. I heard about it from father and her mother. I never heard her say anything about it before. It had been understood all of the time.''

The defendant, Melissa Wells, testified as a witness in her own behalf, over the objections of plaintiff, but at the close of all the evidence her testimony was withdrawn by her counsel.

L. N. Cave, father of plaintiff, testified: ''I am the father of the plaintiff in this case, and the husband of Tenny Cave. Melissa Wells was my mother-in-law. Prior to the time when I and my wife were married, we had a conversation with Mrs. Wells (defendant) about where we were to live. I told her that my wife said we could live down there when we were married, on this south twenty. She said, 'Yes, you can move down there, for she will get that some day.' At that time I never heard my wife, or anyone else, say that the land had been divided, and she had taken this twenty and her mother the other twenty. I never did hear my wife, nor Mrs. Wells, nor anyone,

claim that this land had been divided and that she had taken one twenty and her mother the other. I never did have any conversation with Mrs. Wells about it. They just permitted us to live there. Mr. Wells had a daughter and he wanted to make a division with her, and he said he would deed that to Tenny and give his daughter $200. When he deeded the land to my wife, he said he would deed it to her so they would all share alike." Cross-examination: "We never had any division of this land. We went into possession of the south twenty and stayed in possession of it all the time. Mr. and Mrs. Wells kept possession of the north twenty. The fence was never on the line all the time; it was put on the line later. I caused it to be put there. I wanted the fence there because his hogs would stir my spring water up and they did not need the water, so put the fence there. He agreed to it. I asked him to. That was after the deed was made, some twelve or fifteen years ago."

The trial court found the issues for defendant and entered judgment affirming and confirming the oral division or partition of the forty (or forty-three) acres of land, aforesaid, and adjudging defendant to be the owner in fee simple, by virtue of said oral division and by virtue of the Statute of Limitations, of the twenty (or twenty-three) acres of land described in the petition, and that the plaintiff has no right, title, interest or estate therein and is forever barred from asserting any claim of ownership thereto, adverse to the title of defendant and her grantees, and plaintiff was ordered to pay the costs of suit. After an unsuccessful motion for a new trial, plaintiff was allowed an appeal to this court.

The instant cause appears to have been tried below upon the theory that defendant, Melissa Wells, as the widow of William McDonald, who was the common source of title, had consummate dower in the forty (or forty-three) acres of land of which William McDonald died seized, and seemingly plaintiff, by the very nature and purpose of his action, which seeks the admeasurement and assignment of dower to defendant in the twenty (or twenty-three) acres of land in controversy, has proceeded upon the theory that defendant is now entitled to consummate dower in said twenty acres. The defendant, on the other hand, has proceeded upon the theory that defendant and her daughter, Tennessee L. Cave (nee McDonald), who was the sole heir of William McDonald, in the year 1898, when the daughter was nineteen years of age and had attained her majority, and prior to her marriage, by mutual agreement made an oral and voluntary partition of the forty (or forty-three) acres of land of which William McDonald died seized, whereby the daughter, Tennessee L. Cave (nee McDonald), took the equitable title in fee simple to the south twenty acres, free from any claim of right, title or interest therein of her mother, Melissa Wells, and the mother, the defendant herein, Melissa

Wells, took the equitable title in fee simple to the north twenty (or twenty-three) acres, being the land now in controversy, free from any claim of right, title or interest therein of her daughter, Tennessee L. Cave; and that each of the contracting parties took immediate and exclusive possession of her respective twenty acres, and each has continued in exclusive, adverse, undisputed, notorious, and uninterrupted possession of her respective twenty acres for the period of time prescribed by the Statutes of Limitation, so as to ripen the equitable fee simple title into a legal title. The learned trial chancellor, by his judgment and decree entered herein, found that defendant and her daughter had made voluntary and oral division or partition of the forty (or forty-three) acres of land of which William McDonald died seized, and confirmed and affirmed such oral division or partition, decreeing defendant to be the owner of the legal title in fee simple in and to the twenty (or twenty-three) acres of land in controversy, free from any claim of right, title or interest of plaintiff therein. Plaintiff (appellant) contends that partition, whether voluntary and oral, or whether compulsory and judicial, can only be had between cotenants, and cannot be had between a life tenant and a remainderman; hence, appellant urges that the trial court erred in holding that partition could be had between defendant and her daughter, who were not cotenants, but who were, respectively, life tenant and remainderman, as respects the forty (or forty-three) acres of land of which the common source of title, William McDonald, died seized.

It is unquestionably and firmly established by the decisions of this court that, while parol partition, consummated by possession and acquiescence under it for any less period than that which is sufficient to make the Statutes of Limitation a bar, does not vest the legal title in severalty to the allotted shares, yet such partition, acquiesced in by the parties for a considerable length of time, coupled with exclusive possession of the allotted shares, will estop any person joining in it, and accepting exclusive possession under it, from asserting title or right to possession in violation of its terms. [Petrie v. Reynolds (Mo. Sup.), 219 S. W. 934, 938; Edwards v. Latimer, 183 Mo. 610; Gulick v. Huntley, 144 Mo. 241; Sutton v. Porter, 119 Mo. 100; Nave v. Smith, 95 Mo. 596; Hazen v. Barnett, 50 Mo. 506.] But it has also been held by this court that partition, whether voluntary, or whether involuntary and judicial, implies a joint ownership, in some form, of land, or of an estate or interest in land, and that, inasmuch as parol partition, in the first instance, does no more than effect a severance of possession, it is essential that the parties thereto have a title, in the land, or in the estate or interest in land, so partitioned and divided, with respect to which they are either joint tenants or tenants in common. [Petrie v. Reynolds, 219 S. W. 934,

938; Bompart v. Roderman, 24 Mo. 385, 400.] And such seems to be the general weight of judicial authority. [30 Cyc. 153, 155, and cases cited; 20 R. C. L. 719.] In 30 Cyc. 153, 155, the text writer, in speaking of partition by act of the parties, or voluntary partition, says: "It is always essential to a partition that the property be held in co-tenancy. . . . *None but cotenants can make partition.*" And in 20 Ruling Case Law, 719, it is said: "It is well settled that persons interested in land, as owners, *being cotenants,* may, by consent and agreement among themselves, bona fide, make a division thereof so as to sever their interests and thereupon, waiving the ordeal of trial by proof in court as to title, procure a deed of partition." (Italics ours.)

According to the record herein, William McDonald, the common source of title, and the first husband of defendant, died in the year 1886, sized of forty (or forty-three) acres of land, of which the land now in controversy is a part. In 1887, the General Assembly enacted an act (Laws 1887, p. 177) barring dower in real estate unless an action for the recovery of such dower be commenced within ten years from and after the act took effect, or within ten years after the death of the husband, with the provisos that the act should not apply to persons suffering under legal disability at. the time the act took effect, nor to any case where the widow is in possession of, and enjoying, the mansion house of her husband. The aforesaid act was amended at the revising session of the General Assembly of 1889 by eliminating the provisos, leaving the amended statute in the following form: "All actions for the recovery of dower in real estate, which shall not be commenced within ten years from the death of the husband, through or under whom such dower is claimed or remanded, shall be forever barred." [Sec. 4558, R. S. 1889.] The statute has been brought down in its amended form, by subsequent revisions of the statutes, until its repeal, and the enactment of a new section in lieu thereof, in 1921. [Laws 1921, pp. 119, 120.] Under our construction of the aforesaid statute, the widow's consummate dower in her deceased husband's real estate becomes extinct unless she has commenced a proper and appropriate action or proceeding for the recovery and admeasurement of dower within ten years from the death of her husband. [Falvey v. Hicks, 315 Mo. 442, 461; Belfast Investment Co. v. Curry, 264 Mo. 483, 498; McFarland v. McFarland, 278 Mo. 1, 12; Edmonds v. Scharff (Mo. Sup.), 213 S. W. 823, 827.] William McDonald, the former husband of defendant, having died in 1886, and the defendant having failed to bring an appropriate action or proceeding for the admeasurement and recovery of her consummate dower in the forty (or forty-three) acres of land of which her said husband died seized within ten years from the death

of her said husband, defendant's consummate dower in such lands became extinct in the year 1896. Nor did defendant (so far as the record herein discloses) make the statutory election to take a child's share, *in lieu of dower,* in the lands of her deceased husband within said period of ten years after his death, and seemingly her right to make such statutory election expired concurrently with the extinction of her consummate dower in her deceased husband's lands, for it is entirely logical that, inasmuch as defendant's consummate dower became extinct in 1896, likewise her right to elect to take a child's share *in lieu of dower* also expired at the same time. [18 C. J. p. 860, sec. 105; Payne v. Payne, 119 Mo. 174, 179.] Hence, defendant and her daughter Tennessee L. McDonald (afterward Cave), in 1898 or 1899, when the alleged oral division or partition of the lands of William McDonald is purported to have been made, were neither joint tenants nor tenants in common of said lands, and, therefore, were not cotenants respecting said lands, and, under the aforecited rulings of this court, and under the weight of judicial authority in other jurisdictions, oral partition of said lands could not be had between defendant and her daughter at that time.

But there is a suggestion in defendant's answer that the forty (or forty-three) acres of land, of which William McDonald died seized and possessed, constituted and comprised his homestead, for the answer avers that *"the dwelling house* of the said William McDonald was situated on the land" described as being the south twenty acres of said forty (or forty-three) acres of land. Furthermore, the testimony of several of the witnesses herein, respecting declarations against interest made by Tennessee L. Cave during her lifetime, was that Tennessee L. Cave had declared that she had agreed with her mother, the defendant herein, to "take the twenty acres with the *house* and barn on it" and that "her mother gave her the *home* because it had all the improvements on it," and also that Tennessee L. Cave had said that "grandma ought to be satisfied, that Ma gave me the *home place.*" There is no clear and positive evidence in the record, however, that the said forty (or forty-three) acres of land constituted the homestead of William McDonald, at the time of his death. At the time of the death of William McDonald in 1886, homestead in the country, outside of any city, was defined by the then existing statute (Laws 1881, p. 139; Sec. 5435, R. S. 1889) as consisting of the dwelling house and appurtenances, and the land used in connection therewith, not exceeding 160 acres of land, and not exceeding the total value of fifteen hundred dollars. The forty (or forty-three) acres of land owned and possessed by William McDonald at the time of his death lay in a single and entire tract, and did not exceed in area the homestead acreage limited and prescribed by said statute, but the total value of said single and entire tract of land, at

the time of the death of William McDonald, is not shown in evidence.

The homestead statute in force and effect at the death of William McDonald (Sec. 2693, R. S. 1879; Sec. 5439, R. S. 1889) further provided: "If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its (his) legal majority, and until the death of such widow; and such homestead shall, upon the death of such housekeeper or head of a family, be limited to that period."

This court has repeatedly ruled that the aforesaid statute vested in the widow *an estate* in the homestead land for *her life,* which life estate of the widow in the homestead land is neither divested by her subsequent marriage, nor abandoned and relinquished by the removal of her place of residence from the homestead land; in other words, our settled construction of the meaning and effect of said statute is that the widow of the deceased homestead owner does not abandon and relinquish her life estate in the homestead land, prescribed by said statute, by a subsequent marriage, or by the removal of her permanent residence from the homestead land to that of her second husband, within the State. [West v. McMullen, 112 Mo. 405, 411; Hufschmidt v. Gross, 112 Mo. 649, 658; Wicoff v. Moore (Mo. Sup.), 257 S. W. 474, 476.] If the forty (or forty-three) acres of land of which William McDonald died seized comprised his homestead, then defendant herein, as his widow, became vested with a life estate in the whole of said land upon the death of William McDonald, which life estate of defendant was not divested by her subsequent marriage, and which life estate was not abandoned or relinquished by the removal of her place of residence to that of her second husband, L. D. Wells, in the same county of the State. The homestead being the broader estate, it was unnecessary that dower in said forty (or forty-three) acres of land (if said land were, in fact, a homestead) be assigned to defendant, or that she should bring an action for the recovery and admeasurement of her dower therein. [Jordan v. Rudluff, 264 Mo. 129, 135; Falvey v. Hicks, 315 Mo. 442, 461.] If, therefore, the forty (or forty-three) acres of land of which William McDonald died seized compromised his statutory homestead, then his widow, the defendant herein, by virtue of the homestead statute in force and effect at the time of the death of her said husband, became vested with an estate in said land which she could sell, exchange and convey, and with reference to which she had the right and power to contract. Moreover, Tennessee L. McDonald, the daughter of defendant and William McDonald, as the sole heir of her deceased father, was vested with

an estate (in remainder) in fee simple in said forty acres of land, subject to her mother's life estate in the whole of said land, which she could sell, exchange and convey upon attaining her majority, and with reference to which she had the right and power to contract after becoming of legal age.

The evidence herein tends to show that, in 1898 or 1899, when Tennessee L. McDonald was nineteen years of age, and after she had attained her majority and had become of full age for all purposes (Sec. 3477, R. S. 1899), and prior to her marriage with L. N. Cave, she made an oral contract or agreement with her mother, the defendant herein, whereby Tennessee L. McDonald was to take the south twenty acres of said forty (or forty-three) acres of land free from any claim of right, title or interest therein of her mother; and whereby the defendant herein was to take the north twenty (or twenty-three) acres of said forty (or forty-three) acres of land free from any claim of right, title, or interest therein of her daughter, Tennessee L. McDonald. According to the evidence herein, the defendant, Melissa Wells, fully performed her part of said oral contract or agreement by delivering the exclusive possession of said south twenty acres to her daughter, Tennessee L. Cave (*nee* McDonald), upon the latter's marriage, and thereafter the daughter continued in the exclusive possession of said south twenty acres until the time of her death, since which time the daughter's husband, L. N. Cave, has continued in the exclusive possession of the same. During all of said period of time, neither Tennessee L. Cave, nor her husband, L. N. Cave, according to the evidence herein, has paid to defendant any rents for the use, occupancy and possession of said south twenty acres of land, nor has defendant received and been paid any of the usufruct therefrom. The relinquishment, by the defendant, of the exclusive possession of the south twenty acres of land to her daughter, Tennessee L. Cave, and of the rents and profits therefrom, was a valuable and adequate consideration for the correlative promise and agreement of the daughter that her mother, the defendant herein, was to have and to take the north twenty (or twenty-three) acres, the land now in controversy, free from any claim of right, title or interest therein of the daughter. [Alexander v. Alexander, 150 Mo. 579, 599.] In furtherance of the said oral contract or agreement between the mother and daughter (according to the evidence herein), the defendant herein and her second husband, L. D. Wells, by warranty deed executed and delivered on December 27, 1901, conveyed all their estate, right, title and interest (and of each of them) in and to the south twenty acres of land to the daughter and her husband. No deed conveying the north twenty (or twenty-three) acres of land now in controversy, or of the daughter's estate, right, title and interest therein, was made by the daughter to her mother, the

defendant herein. If the oral agreement aforesaid was made between the mother and daughter (and the learned trial court so found from the evidence adduced), and the mother having fully performed her part of said agreement, then it seems to be clear that a refusal or failure to complete such agreement will work a fraud upon the mother, the defendant herein. The object and purpose of the Statute of Frauds being to prevent the commission of a fraud, and not to work and accomplish a fraud, it has therefore become well-settled law in this State that an agreement or contract relating to the transfer or exchange of real estate (and of the nature of the agreement alleged herein), although oral, if fully performed by one of the parties, so that a refusal or failure of the other party to complete and perform it will work a fraud on the party who has fully performed his part, does not fall within the Statute of Frauds and affords good ground for the interposition of a court of equity to enforce its specific performance. [27 C. J. 340, 341; Alexander v. Alexander, 150 Mo. 579, 597, and cases there cited; Berg v. Moreau, 199 Mo. 416, 433; Fishback v. Prock, 311 Mo. 494, 506.] Under the aforecited decisions of this court, and under the foregoing facts and circumstances, if they are found to be true by the trial court, the trial court, sitting as a court of equity, has the unquestionable right and authority to adjudge and decree the legal, as well as the equitable, title in fee simple in and to the twenty (or twenty-three) acres of land in controversy to be vested in the defendant, not, however, because of the alleged oral division or partition of the forty acres of land of which William McDonald died seized, but because of the oral agreement made by and between defendant and her daughter respecting the transfer and exchange of title to said lands, which agreement the evidence herein tends to show was fully performed by defendant, and the failure of performance of which agreement on the daughter's part will work a fraud upon the defendant herein. "Equity regards that as done which ought to be done." [21 C. J. 200; Key v. Jennings, 66 Mo. 356, 370.]

It is insisted by plaintiff (appellant) that the evidence is not sufficiently clear, cogent, definite and unequivocal as to establish the alleged oral agreement between defendant and her daughter. It is true that the evidence respecting such agreement consists largely, if not almost entirely, of the testimony of witnesses respecting the declarations against interest made by Tennessee L. Cave, the daughter of defendant, during her lifetime. We regard such evidence, however, when viewed and considered in the light of the acts and conduct of the defendant and her daughter with respect to their continuous and exclusive possession, occupancy and use of the respective tracts of land, in severalty, as being substantial and amply sufficient to support the finding of the learned trial chancellor that the oral

agreement was made between the defendant and her daughter, and that the terms of said oral agreement were as shown by the evidence. It is insistently urged, however, by the plaintiff and appellant that the warranty deed made in December, 1901, by the defendant herein to her daughter and the daughter's husband (in which deed defendant was joined by her second husband, L. D. Wells), conveying the south twenty acres of land aforesaid, was made for a valuable consideration expressed in the deed, and is contradictory of the alleged oral agreement between defendant and her daughter. There is positive testimony in the record, however, that such deed was made by defendant in furtherance of the oral agreement aforesaid, and while the deed upon its face recites a consideration of $250 as having been paid by the grantees to the grantors therein, and that the deed was given to the daughter as an advancement of her interest, present or future, in the estates of the grantors, nevertheless, the established rule in this State is that the consideration clause of a deed is open to explanation, and the true and actual consideration may always be shown; in other words, the parties are not estopped from showing the character of the consideration to be different from that stated in the deed. [Edwards v. Latimer, 183 Mo. 610, 626, and cases therein cited.]

All of the equities are on the side of the defendant herein, and if substantial proof had been made on the trial that the forty (or forty-three) acres of land of which William McDonald, the common source of title, died seized comprised his statutory homestead, and that the value of said land at the time of his death did not exceed the value of the homestead land prescribed by the then existing statute (Sec. 5435, R. S. 1889), we would affirm the findings and decree of the learned trial chancellor as being for the right party and as accomplishing a right result. Inasmuch, however, as there is no substantial, clear and positive evidence set out in the record that the land of which William McDonald died seized comprised his homestead, or that the value of said land at his death did not exceed that prescribed by the then existing homestead statute, the cause must be remanded to the trial court for the purpose of taking and receiving proof thereof, if such be the facts and if such proof be available.

The judgment *nisi* is therefore reversed, and the cause is remanded for further proceedings in accordance with the views herein expressed. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.